IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ELGASIM MOHAMED FADLALLA, *et al.* | ) ) ) ) ) |  |
| Plaintiff-Relators, | ) ) |  |
| v. | ) ) | Case No. 8:15-cv-01806-PX |
| DYNCORP INTERNATIONAL LLC, *et al.*, | ) ) ) ) |  |
| Defendants. | ) ) ) |  |

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT BY DEFENDANT KMS SOLUTIONS, LLC**

Defendant KMS Solutions, LLC ("KMS") submits this reply in support of its motion to dismiss all claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] Relators fail to address KMS's group pleading arguments, so they should be treated as conceded. Additionally, Relators' opposition confirms that through group pleadings they improperly seek to hold KMS liable for periods of time in which it had no relationship with any other Defendant and employed no Relators, for actions occurring in the Middle East, wherein KMS never is alleged to have employed any Relator, and for an alleged conspiracy that is uncontested and was not pled. As a result, KMS's Motion to Dismiss should be granted.

**I.     Relator Has Not Plead Specific False Claims Made by KMS**

KMS moved this Court to dismiss the counts against it because, intra alia, Relators failed to "plead even generally — much less with particularity — KMS's involvement in or assistance

---

[1] KMS joins and adopts the replies filed by Defendant Global Linguist Solutions, LLC ("GLS") and Defendant AECOM National Security Programs, Inc., to the extent not contradictory to the present motion.

with the unlawful conduct." (Mot. at 4). KMS highlighted the First Amended Complaint's ("FAC") failure to plead any conduct by KMS that would tie it to the allegations. For example, the First Amended Complaint alleges conduct by GLS that is unrelated to any KMS activities, and also alleges violations relating to "Contract 2" yet KMS is not alleged to be a subcontractor on that contract. (Mot. at 9). Aside from noting that KMS served as a subcontractor and entered into a teaming agreement with GLS, there is no substance whatsoever to connect KMS to any allegedly improper conduct. For these failures, which run afoul of the requirements under Fed. R. Civ. P. Rule 12(b)(6) and Rule 9(b), KMS requests dismissal.

In response, Relators merely reiterate minimal touchpoints, claiming that by the singular act of signing a teaming agreement and serving as an employer to one individual working in the United States, KMS became enveloped in a massive world-wide years-long fraudulent scheme. (Opp. at 3) ("They partook in this wrong-doing as evidenced by the "teaming agreements" they entered into with GLS the terms of which had the effect of converting them into GLS's affiliates and surrendering actual participation in the performance of Contract 1 . . . and by allowing GLS to generate paperwork that falsely represent them as Relators' employers.") (internal citations omitted). The strain in this connection is palpable. It is only through the gloss afforded by group pleading, which as discussed below is improper, that Relators even hint at a connection to KMS. More is required and Relators have failed to meet their burden. Fed. R. Civ. P. 9(b) and 12(b)(6). Dismissal is required for this reason alone.

## II. **Relator's Group Pleading is Inappropriate**

### A. Relators Fail to Address KMS's Group Pleading Arguments

In its Motion to Dismiss, KMS argued that the First Amended Complaint improperly relies on group pleadings to satisfy Rules 8 and 9(b). (Mot. at 6-7). As explained in KMS's Motion:

> Where allegations are made against a group of defendants, generalizations as to the group are insufficient to satisfy the pleading standards. *See Twombly*, 550 U.S. at 565 n.10 ("[T]he complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed."); *Atuahene*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (dismissing complaint under Rule 8 because plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct"). The prohibition on group pleading applies at least with equal force where a group of defendants is subject to allegations of fraud. "In addition to meeting the plausibility standard of Iqbal, fraud claims under the Act must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Nathan v. Takeda Pharmaceuticals N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013).

(Mot. at 6). KMS then explained that:

> Relators' deficient group pleading permeates every element of their claims against KMS. KMS is alleged to be a member of the "Small Business Defendants," (Am. Compl. ¶8), but there is no specific factual allegation that KMS itself engaged in any specific act as part of or on behalf of the group.

(Mot. at 6).

In their opposition, Relators fail to substantively contest this prohibition against group pleading. (*See* Dkt #123 ("Opp"). Instead, Relators merely repeat, without any citation, its belief that Rules 8 and 9(b) can be satisfied through its grouping of KMS with the Small Business Defendants, even though KMS is not alleged to have engaged in any specific act as part of or on behalf of the group, was not originally included in the defined group, and was only added in later, and even though most of the allegations did not directly relate to KMS. (*See, e.g.,* Opp. at 3, n.4) ("KMS ingenuously asserts that only seven of the 593 paragraphs in this complaint apply to it. KMS MTD at 2. In fact, the FAC describes, with exquisite particularity, the small business contracting fraud wherein *KMS was one of five small businesses* that sold their small business

3

status for use by DI, AECOM, and GLS to bid upon and earn money from Contract 1.") (emphasis added).

This response fails to substantively address KMS' arguments. Rather, it underscores that Relators rely on group conduct without any underpinning as to the activities of the group members, which as discussed below is not appropriate. For this reason the issue should be deemed conceded. *Ezirim v. U.S.*, GJH-16-0289, 2016 WL 7489016, at *3 (D. Md. Dec. 28, 2016) ("Moreover, by not filing an opposition to Defendant's Motion to Dismiss and, thus, failing to respond to Defendant's argument regarding exhaustion, Plaintiff has conceded this point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 783 (D. Md. 2010) ("By her failure to address these arguments in her opposition to [defendants] motion to dismiss, [plaintiff] has abandoned this claim.").

> B. Through Group Pleading, Relators Seek to Hold KMS Liable for Alleged Actions During Times and At Places Unrelated to the Allegations Against KMS and for a Conspiracy Relators Failed to Plead.

In their opposition, Relators explain that they seek to hold KMS liable for the following unpled conspiracy occurring in the Middle East from 2006-2013: "This massive SBA fraud was perpetrated in Herndon, Virginia[2] and in Kuwait (at camps Ali Al-Salem, Arifjan, and Buehring) (the "where"), *id*. at ¶¶ 185-87, from June 30, 2006, through January 2013 (the "when"), *id*. at ¶¶ 2, 59." (Opp. at 2-3). The issue, however, is that this statement is not supported by the cited paragraphs in the First Amended Complaint, and is unrelated to KMS.

It is uncontested that KMS's only connection to the Relators is allegedly employing one Relator *in the United States*; the fraud allegations occurring in the Middle East, thus <u>cannot</u> apply

---

[2] The citations do not support the proposition that any fraud was perpetrated in Herndon, Virginia. Instead, the cited allegations assert that all alleged fraud occurred at camps in Kuwait. Am. Compl., ¶¶ 184-87 (identifying (1) Camp Ali Al-Salem west of Kuwait City, (2) Camp Buehring also west of Kuwait City, and (3) Camp Arifjan west of Kuwait City as the "three locations where Relators were housed.").

to KMS. Further, Relators allege that the "when" of the Small Business Defendants' fraud occurred "from June 30, 2006, through January 2013 (the "when")." (Opp. at 3.) However, the allegations in the First Amended Complaint as to KMS are simple and straight-forward – KMS only employed a single person for a period of approximately twenty months from March 2010 through November 2011:

> GLS then assigned Kabbaj to "work" for KMS. Kabbaj was listed as a KMS employee from March 2010 through November 2011, when Kabbaj decided to return to the U.S. to take time away from the battle field in Iraq.

(FAC ¶ 438). Thus, Realtors' opposition confirms that through group pleading they seek to hold KMS liable for actions from June 30, 2006 through March 2010 and November 2011 through January 2013, even though the express allegations of the First Amended Complaint do not support such an allegation.

This precisely shows why Relators are not permitted to plead through group pleadings, especially because the particular facts pled related to the Small Business Defendants relate to other Defendants and occurred outside the 20-month period KMS was alleged to have employed Relator Kabbaj. Relators argue that KMS entered into "teaming agreements" that converted it into a GLS affiliates. (Opp. at 6). In support of this allegation, Relators cite to, inter alia, paragraph 89, which solely relates to Shee Atika, and has no relation to KMS. (*Id.*; FAC ¶ 89) ("For example, Shee Atika's Teaming Agreement with GLS delineates, at Exhibit B to such agreement, the division of responsibility between GLS and Shee Atika. . . ."). Relators further cite to paragraph 190, *et seq.*, which provides that:

> On May 10, 2012, at his GLS orientation, GLS instructed Zinnekah to sign a contract identifying Shee Atika as his employer . . .

5

(Am. Compl., ¶¶ 190, *et seq.*).  Again, in 2012, KMS is not alleged to have any relationship with any other Defendants or any of the Relators, but Relators seek to impose the alleged actions of Shee Atika on KMS, since Relators have no actual allegations against KMS.  Significantly, the First Amended Complaint alleges that in 2012 Relator Kabbaj worked for Engility, not KMS. (FAC ¶ 438) ("When Kabbaj returned to work for GLS in October 2012, GLS assigned him to work for Engility.").

Additionally, beyond relying on group pleadings, the First Amended Complaint and Relators' opposition is based on an unpled conspiracy theory.  (*See* Opp. at 2) ("Nevertheless, Relators' 110-page, 593-paragraph First Amended Complaint provides an extraordinary amount of detail *about the scheme* employed to falsify KMS and T/WI's participation in the performance of Contract 1 and to hide GLS's violations of the TVPRA – violations from which KMS and T/WI generously profited.") (emphasis added)).  However, as KMS argues in its Motion and Relators do not contest, Relators did not plead a conspiracy count in the Amended Complaint.  (*See* Mot. at 1, 4, 9).  Therefore, Relators' First Amended Complaint and opposition, which is based on the existence of such a conspiracy and actions performed by others in the conspiracy, is insufficiently plead and must be dismissed.

Finally, Relators argue that KMS should be held liable for other Defendants' alleged violations of the TVPRA. (Opp. at 4).  However, as Realtors acknowledge, the TVPRA relates to forced labor and human trafficking.  (*Id.*)  As discussed above, these alleged abuses occurred in the Middle at Camps Ali Al-Salem, Buehring, and Arifjan.  KMS is ***not*** alleged to have employed anyone working at those camps.  Not surprisingly, Relators cannot cite to a single allegation in the Amended Complaint linking KMS to any trafficking activity.  Instead, Relators make bald and factually incorrect statement that KMS's employee was trafficked into Kuwait, even when the

6

Amended Complaint flatly belies any such allegation.  *Compare* (Opp. at 7-8) ("The complete lack of interest in whether or not "their" linguists were being illegally trafficked into Kuwait betrays SBA Contractors' reckless disregard, and therefore KMS and T/WI's knowledge of the TVPRA violations that are the subject of the FAC."), *with* (FAC ¶ 438) ("GLS then assigned Kabbaj to "work" for KMS. Kabbaj was listed as a KMS employee from March 2010 through November 2011, ***when Kabbaj decided to return to the U.S. to take time away from the battle field in Iraq***.") (emphasis added)).  As such, KMS cannot be held liable for actions of which it has no connection.

In sum, it is only through group pleading that Relators are able to insert KMS into activities in countries where it was not present, on contracts to which they were not privy, and during time periods which they were not engaged, all without reference to a single individual or specific act taken. This is patently improper under Rules 8 and 9(b).  *Juntti v. Prudential-Bache Securities, Inc.*, 993 F.2d 228 (4th Cir. 1993) ("Further indicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act."); *In re Royal Ahold N.V. Securities & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004) ("The plaintiffs include [defendant] Boonstra in their broad group pleadings and allege that he acted as a control person, but they fail to note a single specific act taken by [defendant] Boonstra directed at the U.S."); *see also U.S. v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."); *U.S. ex rel. Park v. Legacy Heart Care, LLC*, No. 3:16-CV-803-S, 2018 WL 5313884, at *6 (N.D. Tex. Oct. 26, 2018) ("The Court finds that this group pleading does not provide Defendants with fair notice of Relator's claims.").

7

## **Conclusion**

For all of these reasons, the First Amended Complaint should be dismissed against Defendant KMS Solutions, LLC in its entirety.

Respectfully submitted,

*/s/ Philip T. Evans*
Philip T. Evans (D. Md. Bar No. 11796)
Megan M. Jeschke (admission pending)
HOLLAND & KNIGHT LLP
800 17th Street, NW
Suite 1100
Washington, DC 20006
202-457-7043
202-955-5564 (Fax)
philip.evans@hklaw.com
megan.jeschke@hklaw.com

*Counsel for Defendant KMS Solutions, LLC*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 30th day of May 2019, a true and correct copy of the foregoing was served via the Court's CM/ECF system to:

Charles S Fax
RIFKIN LIVINGSTON LEVITAN AND SILVER LLC
7979 Old Georgetown Rd Ste 400
Bethesda, MD 20814
13019510150
Fax: 13019510172
Email: cfax@rlls.com

Joseph A Hennessey
THE LAW OFFICE OF JOSEPH HENNESSEY LLC
2 Wisconsin Circle
Suite 700
Chevy Chase, MD 20815
3013515614
Email: jhennessey@jahlegal.com

Timothy Newlyn Mathews
CHIMICLES AND TIKELLIS LLP
361 W Lancaster Ave
Haverford, PA 19041
6106428500
Fax: 1106493633
Email: tnm@chimicles.com

*Counsel for Plaintiff-Relators*

Jan Paul Miller
Claire Schenk
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
Telephone: (314) 552-6000
Facsimile: (314) 552- 7000
Email: cschenk@thompsoncoburn.com

*Counsel for DynCorp International LLC*

Molissa Heather Farber
U.S. ATTORNEY'S OFFICE
District of MD
36 S Charles St
4th Fl
Baltimore, MD 21201
4102094862
Fax: 4109622310
Email: molissa.farber@usdoj.gov

*Counsel for United States of America*

William F. Stute
Jonathan A. Direnfeld
David Rhinesmith
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street N.W.
Washington, D.C. 20005
Telephone: (202) 339-8580
Facsimile: (202) 339-8500
Email: wstute@orrick.com
jdirenfeld@orrick.com
drhinesmith@orrick.com

*Counsel for Global Linguist Solutions, LLC*

9

Craig Smith
Roderick L. Thomas
P. Nicholas Peterson
WILEY REIN LLP
1776 K Street N.W.
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: rthomas@wileyrein.com

*Counsel for AECOM National Security Programs, Inc.*

                                                */s/ Philip T. Evans*
                                                Philip T. Evans

#68092813_v1