**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* | ) |
| **ELGASIM MOHAMED FADLALLA,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. 8:15-cv-01806-PX** |
| | ) |
| **DYNCORP INTERNATIONAL LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF**
**THOMAS/WRIGHT, INC.'S MOTION TO DISMISS**

Defendant, Thomas/Wright, Inc. ("T/WI"), by counsel, respectfully submits this Reply

Memorandum in Support of its Motion to Dismiss ("Motion") with prejudice all claims against it

in the Relators' First Amended Complaint.

**I.    SUMMARY**

T/WI's Memorandum (ECF No. 100-1) presented two principal reasons why claims

alleged against it in the First Amended Complaint should be dismissed with prejudice.  First,

Relators failed to allege any facts to state a claim against T/WI for violation of the False Claims

Act ("FCA") or the Trafficking Victims Protection Reauthorization Act ("TVPRA").  Second,

Relators' claims are barred because they are based on publicly disclosed information, and/or by

the statute of limitations.[1]

---

[1]    T/WI adopts and incorporates by reference the memoranda filed by Global Linguist Solutions, LLC ("GLS"), AECOM National Security Programs, Inc. ("AECOM"), DynCorp International, LLC ("DynCorp"), KMS Solutions, LLC ("KMS"), and Shee Atiká Languages, LLC ("Shee Atiká") in support of their respective motions to dismiss.

Relators' Opposition (ECF. No. 123) failed to rebut the grounds for dismissing the First Amended Complaint. Relators simply ignored their improper reliance on conclusory "group pleading" allegations and allegations based "upon information and belief" and employed a strategy that alternatively misstated the allegations in their First Amended Complaint, or added *post hoc* allegations that were not set forth therein. In short, Relators did not – because they cannot – point to specific factual allegations in the First Amended Complaint that support their claims against T/WI.

Finally, the Statement of Interest (ECF No. 124) filed by the United States confirms that T/WI's Motion should be granted. Among other things, cases cited by the United States support the well-settled legal principle that when multiple defendants are accused of FCA violations and other wrongdoing, Relators are required to allege facts to show what role each defendant allegedly played in the purported fraud.

In sum, Relators may not avoid dismissal merely by labeling T/WI a "Small Business Defendant" and making conclusory "group pleading" allegations that the "Small Business Defendants" are liable for damages under the FCA and the TVPRA. For these and other reasons discussed in greater below, the First Amended Complaint against T/WI should be dismissed with prejudice.

## II.   DISCUSSION

### A.   RELATORS FAIL TO STATE A CLAIM THAT T/WI IS LIABLE FOR ALLEGED CLAIMS UNDER CONTRACT 1

The Fourth Circuit has explained that, "Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and quasi-criminal nature of FCA liability the circumstances constituting the alleged false claim" by requiring "the plaintiff to, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the

person making the misrepresentation and what he obtained thereby."  *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (internal quotations and citations omitted).  Thus, Relators concede, as they must, that their First Amended Complaint must meet the heightened pleading requirements of Rule 9(b) by stating with particularity how T/WI purportedly participated in the alleged violation of the FCA and TVPRA.  *See* Opposition at pp. 1-2 (citation omitted).

Relators, however, quickly admit that their First Amended Complaint does not meet Rule 9(b)'s heightened standard because they contend their fundamental allegation against T/WI is that T/WI did "nothing."  Relators summarize their allegations against T/WI as follows:

> Given that <u>the core allegation against . . . T/WI</u> and the other SBA Defendants <u>is that they did nothing</u> in the face of an obligation to do *something* to meet their participation requirements for performance of Contract 1 (and to refrain from profiting from human trafficking), <u>there exists a natural limitation on the various ways of describing "nothing"</u> with particularity.

Opposition at p. 2 (italics in original) (emphasis added).

The dearth of specific factual allegations regarding T/WI in the First Amended Complaint emphasizes that T/WI did "nothing" to make it liable for alleged violations of the FCA.  There is <u>no</u> allegation in the First Amended Complaint that T/WI was involved in the submission of any proposals, invoices or claims for payment under Contract 1.  There is <u>no</u> allegation in the First Amended Complaint that T/WI conspired with any Defendant to submit a false claim.  Dismissal is appropriate when a complaint fails to allege such facts.  *See*, *e.g.*, *United States ex rel. Tran v. Computer Sciences Corp.*, 53 F. Supp.3d 104, 129, 139 (D.D.C. 2014) (dismissing FCA claims against a subcontractor).[2]

---

[2]     The United States cited *Tran* in its Statement of Interest.  *See* Statement of Interest at p. 7.

In *Tran*, relators brought a FCA action against a prime contractor and a subcontractor called Sagent Partners, LLC ("Sagent") arising out of the prime contractor's small business contracting practices. The relators alleged that the prime contractor set up a scheme where it would subcontract work to a qualified small business and, as a condition of the subcontract, require the small business to agree to sub-subcontract the work to a large business. The court granted the subcontractor's (Sagent) motion to dismiss and explained:

> **In particular, the complaint is devoid of any allegations concerning Sagent's knowledge of the small business requirements under the September 2008 Task Order and the Small Business Subcontracting Plan imposed on CSC [prime contractor], nor are there any allegations of fact that would support any inference that Sagent knew there was a link between those contract requirements and the pass-through dynamic. Such knowledge is the linchpin of establishing fraud under the circumstances presented, and thus it is a necessary element of Relator's allegation that Sagent wrongfully participated in a pass-through scheme that was designed and administered to enable CSC to certify falsely that it was in compliance with its Small Business Contracting Plan.**

*Tran*, 53 F. Supp.3d at 129.

The same situation is presented here. Relators merely allege that, "upon information and belief" GLS submitted a Small Business Subcontracting Plan to the Government. *See* First Amended Complaint, ¶ 491. There is <u>no</u> allegation in the First Amended Complaint that T/WI had knowledge of or participated in the preparation and submission of such a plan.

Relators also admit that their First Amended Complaint "does not name specific personal among SBA Defendants" who allegedly participated in purportedly fraudulent activity. Opposition, fn. 3 at p. 2. This Court and other courts have held that the FCA requires a complaint to present sufficient proof that "a particular employee or officer acted knowingly." *United States v. Fadul*, No. 11-cv-0385-DKC, 2013 WL 781614, at *9 (D. Md. Feb. 28, 2013). Relators cannot rely on a "collective knowledge" theory to avoid identifying a particular

employee or officer who allegedly knowingly participated in the fraudulent claim. *United States v. Science Apps. Int'l. Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("We nonetheless believe that under the FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose."). By their own admission, Relators have failed to meet this requirement.

Furthermore, this Court has held, "[w]hen a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud." *Haley v. Corcoran*, 659 F. Supp.2d, 714, 721 (D. Md. 2009), *citing*, *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). Once again, Relators have failed to meet Rule 9(b)'s requirements. Rather than allege specific facts regarding T/WI's alleged participation in the purported fraud, the First Amended Complaint repeatedly resorts to conclusory "group pleading" allegations that the "Small Business Defendants" or "Defendants" engaged in wrongdoing. *See* First Amended Complaint, ¶¶ 489, 502, 523, 525, 540, 542, and 547.

Finally, Relators' Opposition asserts that T/WI "had no role in the performance of Contract 1, not even processing payroll." Opposition at p. 3 (emphasis added). That is not what is alleged, however, in the First Amended Complaint. Relators cannot avoid dismissal by making *post hoc* allegations in their Opposition that are not set forth in their First Amended Complaint. *See, e.g.*, *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n. 9 (E.D. Va. 2004) ("Plaintiff does seemingly allege in his opposition to defendant's motion to dismiss [additional allegations against defendant], but it is also axiomatic that complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations and internal

quotations omitted); *Cent. Transp., LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 217-18 (E.D. Pa. 2012) ("We cannot consider these *post hoc* allegations in ruling on defendants' motion to dismiss."); *Beavers v. City of Atlanta*, 2015 WL 1509485 (N.D. Ga. Mar. 31, 2015) ("Nor does a plaintiff's *post hoc* allegations suffice to defeat a motion to dismiss.").

Relators boast that their First Amended Complaint is 110 pages long and contains 593 paragraphs. *See* Opposition at p. 2. Compliance with Rule 9(b), however, is not achieved by verbosity. As a matter of law, Relators bear the burden of alleging specific facts that T/WI engaged in conduct that is in violation of the FCA. *See*, *e.g.*, *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.,* 707 F.3d 451, 456 (4th Cir. 2013) (affirming dismissal of FCA claims and declining to adopt a more lenient application of Rule 9(b)). Repeated conclusory "group pleading" allegations that "Small Business Defendants" or "Defendants" are liable is not sufficient.

Relators have utterly failed to meet  the specificity requirements of Rule 9(b). Therefore, all of their claims against T/WI arising out of relating to Contract 1 should be dismissed with prejudice.

**B.    RELATORS FAIL TO STATE A CLAIM THAT T/WI IS LIABLE FOR ANY CLAIMS UNDER CONTRACT 2**

T/WI's Memorandum stated that the First Amended Complaint made "no allegation that T/WI was a subcontractor on Contract 2, or had any involvement whatsoever with Contract 2." Memorandum at p. 2. Relators' Opposition makes no attempt to refute T/WI's statement. In fact, Relators' Opposition makes no mention of Contract 2 at all.

By their complete silence, Relators have conceded that they have not stated any claims against T/WI that arise out of, or are related to, Contract 2. *Ferdinand- Davenport v. Children's*

*Guild*, 742 F. Supp. 2d 772, 783 (D. Md. 2010) ("By her failure to address these arguments in her opposition to [defendants] motion to dismiss, [plaintiff] has abandoned this claim.").

Accordingly, all claims against T/WI arising out of or relating to Contract 2 should be dismissed with prejudice.

### C.   RELATORS FAIL TO STATE A CLAIM THAT T/WI IS LIABLE FOR ANY ALLEGED TVPRA CLAIMS

Count IV of the First Amended Complaint purports to state a claim against "All Defendants" for violation of the TVPRA.  *See* First Amended Complaint at p. 99.  Once again, the dearth of specific factual allegations regarding T/WI in the First Amended Complaint emphasizes that T/WI did "nothing" to make it liable for alleged violations of the TVPRA.  In fact, the few allegations in the First Amended Complaint about T/WI contradict Relators' conclusory allegation that T/WI, as one of the "Small Business Defendants," is liable for violation of the TVPRA.

As noted, the First Amended Complaint alleges that the purported TVPRA violations occurred in Kuwait.  *See* First Amended Complaint, ¶¶ 120, 182-187, 562-570, and 572-593.  The First Amended Complaint alleges T/WI had employment contracts with the following four Relators to provide service in <u>Iraq</u> during the following time periods:

- Relator Magi: February 19, 2010 – May 13, 2011.  *Id.*, ¶¶ 260 and 262.

- Relator Al-Safar: April 2010 – May 2011.  *Id.*, ¶¶ 278-279.

- Relator Luttfi: November 8, 2008 – June 20, 2011.  *Id.*, ¶ 297.

- Relator Antar: The duration of his employment contract with T/WI is not alleged. Relators do allege, however, that GLS hired Relator Antar in September 2009; that on November 19, 2011, Relator Antar "was in transit for Iraq back to the U.S.;" that he accepted GLS' offer to enter into "a new contract pursuant to which he would provide translation services for INSCOM in Qatar;" that GLS left him at Camp Ali Al-Salem in Kuwait from November 2011 through February 2012; and that Relator Antar was injured while in Kuwait.  *Id.*, ¶¶ 313-315, and 322.

The First Amended Complaint does <u>not</u> allege that the preceding four Relators had employment contracts with T/WI when they purportedly performed services in Kuwait. Rather, the First Amended Complaint alleges that, <u>after</u> the terms of their employment contracts with T/WI ended, these four Relators went to Kuwait or elsewhere:

- Relator Magi allegedly arrived in Kuwait on November 30, 2011. *See* First Amended Complaint, ¶¶ 262-263.

- Relator Al-Safar allegedly signed an employment contract with Defendant Shee Atiká in May 2011, but did not go to Kuwait. *Id.*, ¶¶ 279-281.

- Relator Luttfi allegedly moved from Iraq to Kuwait in December 2011. *Id.*, ¶ 292.

- Relator Antar was allegedly employed by Defendant GLS when he arrived in Kuwait in  November 2011. *Id.*, ¶¶ 315-316.

Furthermore, there is <u>no</u> allegation that T/WI had any knowledge of the alleged conditions in Kuwait that Relators rely upon trying to state a claim for violation of the TVPRA. There is <u>no</u> allegation that Relators ever communicated with T/WI regarding the alleged conditions in Kuwait. There is <u>no</u> allegation that T/WI had any communication with any Defendant about the alleged conditions in Kuwait. There is <u>no</u> allegation that T/WI knew of any representations to the Government that GLS was in compliance with the TVPRA.

The First Amended Complaint devotes dozens of paragraphs to Relators' TVPRA claims. *See*, *e.g.*, First Amended Complaint, ¶¶ 7, 15, 516, and 549-593. But not one of those paragraphs identifies any specific knowledge of, or action by, T/WI. There are simply no facts alleged in the First Amended Complaint to state a claim against T/WI for alleged violation of the TVPRA. Therefore, all TVPRA claims against T/WI should be dismissed with prejudice.

**D.      RELATORS' CLAIMS ARE BARRED IN WHOLE OR IN PART BY THE STATUTE OF LIMITATIONS AND/OR PRIOR PUBLIC DISCLOSURE**

For the reasons set forth in the memoranda filed by GLS, AECOM, DynCorp, KMS, and Shee Atiká in support of their respective motions to dismiss, Relators' claims against T/WI should be dismissed because they are barred in whole or in part by the statute of limitations and/or prior public disclosure.

**E.      THE UNITED STATES' STATEMENT OF INTEREST DOES NOT QUESTION THE PRIMARY BASIS FOR DISMISSING ALL CLAIMS AGAINST T/WI**

The United States' Statement of Interest addressed only the motions to dismiss filed by GLS, DynCorp and AECOM; it did not address T/WI's Motion.  T/WI respectfully disagrees with the United States' argument that GLS', DynCorp's and AECOM's motions to dismiss present an incorrect analytical standard for dismissal.

In its Statement of Interest, the United States noted it was not "addressing the sufficiency of the Relators' specific allegations . . ."  *See* Statement of Interest at p. 2.  For the reasons discussed above, the Relators' allegations against T/WI are wholly insufficient.

Indeed, as noted above in Subsection A, the *Tran* case cited by the United States fully supports the dismissal with prejudice of the FCA claims against T/WI.  The other cases cited by the United States do not question the propriety of dismissing FCA claims that rely upon conclusory "group pleading" allegations.

**III.     CONCLUSION**

For the foregoing reasons, as well as those stated in its initial Memorandum, T/WI respectfully moves the Court to dismiss with prejudice all claims against it in the First Amended Complaint.

Respectfully submitted,

THOMAS/WRIGHT, INC.

By Counsel:

Dated: May 30, 2019                    */s/  Richard O. Wolf*
                                       Richard O. Wolf  (Bar No. 04989)
                                       MOORE & LEE, LLP
                                       1751 Pinnacle Drive, Suite 1100
                                       McLean, VA 22102
                                       Tel.: (703) 506-2050
                                       Fax: (703) 506-2051
                                       Email: r.wolf@mooreandlee.com
                                       *Counsel for Thomas/Wright, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filings to all counsel of record.


*/s/  Richard O. Wolf*_____
Richard O. Wolf