**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ELGASIM MOHAMED FADLALLA, *et al.* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 8:15-cv-01806-PX |
| DYNCORP INTERNATIONAL LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**<u>DEFENDANT AECOM NATIONAL SECURITY PROGRAMS, INC.'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

I.    RELATORS HAVE FAILED TO STATE A CLAIM AGAINST AECOM. ................... 3

    A.    Relators Fail to Plausibly Allege that AECOM is Liable as a GLS Joint Venture Member. ................................................................................... 3

    B.    Relators Fail to Allege that AECOM is Otherwise Liable for the Actions of GLS. ................................................................................................ 7

II.   RELATORS HAVE FAILED TO STATE ANY FCA CLAIMS. ................................... 8

    A.    Relators Have Failed to State an FCA Claim under Rules 9(b) and 12(b)(6). ........................................................................................... 8

        1.    *Relators have failed to state a claim of fraudulent inducement* ................ 9

        2.    *Relators have failed to otherwise state an FCA claim* ............................ 13

    B.    The Public Disclosure Bar Prohibits Relators' Claims. ........................................ 15

    C.    Relators' FCA Claims are Barred by the Statute of Limitations. ........................ 17

III.  RELATORS HAVE NOT STATED A CLAIM UNDER THE TVPRA. ....................... 18

    A.    Relators Have Failed to State a Claim Under the TVPRA. .................................. 19

    B.    18 U.S.C. § 1592 Does Not Apply Extraterritorially. ........................................... 19

    C.    The Defense Base Act Preempts Much of Relators' TVPRA Claims. ................. 20

IV.   CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................6

*United States ex rel. Berg v. Honeywell Int'l, Inc.*,
  740 F. App'x 535 (9th Cir. 2018)...................................................................11

*Bill Salter Advert., Inc. v. City of Brewton, Ala.*,
  486 F. Supp. 2d 1314 (S.D. Ala. 2007)...........................................................5

*Brink v. Cont'l Ins. Co.*,
  787 F.3d 1120 (D.C. Cir. 2015)......................................................................20

*United States ex rel. Brooks v. Lockheed Martin Corp.*,
  423 F. Supp. 2d 522 (D. Md. 2006)................................................................13

*C&M Café v. Kinetic Farms, Inc.*,
  2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) .................................................5

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
  139 S. Ct. 1507 (2019).....................................................................................18

*Coffman v. Cent. Bank & Tr. Co.*,
  No. 5:11-CV-00388-KKC, 2012 WL 4433293 (E.D. Ky. Sept. 25, 2012) .............5

*United States ex rel. Complin v. N.C. Baptist Hosp.*,
  No. 1:09CV420, 2019 WL 430925 (M.D.N.C. Feb. 4, 2019) .................................11

*Dean v. United States*,
  556 U.S. 568 (2009).........................................................................................20

*United States ex rel. Dugan v. ADT Sec. Servs., Inc.*,
  No. CIV.A.DKC 2003-3485, 2009 WL 3232080 (D. Md. Sept. 29, 2009)............17

*Elf Atochem N. Am., Inc. v. Jaffari*,
  727 A.2d 286 (Del. 1999) .................................................................................4

*United States ex rel. Escobar v. Universal Health Servs., Inc.*,
  842 F.3d 103 (1st Cir. 2016)....................................................................11, 15

*Ferdinand-Davenport v. Children's Guild,*
    742 F. Supp. 2d 772 (D. Md. 2010) .......................................................16

*United States ex rel. Grant v. United Airlines Inc.,*
    912 F.3d 190 (4th Cir. 2018) ...............................................................14

*Haley v. Corcoran,*
    659 F. Supp. 2d 714 (D. Md. 2009) .......................................................7

*Harrison v. Westinghouse Savannah River Co.,*
    176 F.3d 776 (4th Cir. 1999) ...............................................................9

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
    498 F. Supp. 2d 25 (D.D.C. 2007) .........................................................7

*Leber v. Universal Music & Video Distribution, Inc.,*
    225 F. Supp. 2d 928 (S.D. Ill. 2002) .....................................................6

*United States ex rel. Longhi v. United States,*
    575 F.3d 458 (5th Cir. 2009) ...............................................................11

*United States ex rel Lopez v. Strayer Educ., Inc.,*
    698 F. Supp. 2d 633 (E.D. Va. 2010) .....................................................9

*United States ex rel Martinez v. Va. Urology Ctr., P.C.,*
    No. 3:09-CV-442, 2010 WL 3023521 (E.D. Va. July 29, 2010) .............13

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,*
    812 F.3d 294 (3d Cir. 2016) ................................................................15

*United States ex rel. Moore v. Cardinal Fin. Co., L.P.,*
    No. CV CCB-12-1824, 2017 WL 1165952 (D. Md. Mar. 28, 2017) .......13

*Muchira v. Al-Rawaf,*
    850 F.3d 605 (4th Cir. 2017), *as amended* (Mar. 3, 2017) ....................19

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.,*
    707 F.3d 451 (4th Cir. 2013) ...............................................................14

*United States ex rel. Omni Healthcare Inc. v. McKesson Corp.,*
    No. 12-CV-6440 (NG) (LB), 2019 WL 438357 (E.D.N.Y. Feb. 4, 2019) ............18

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    538 F. Supp. 2d 367 (D. Mass. 2008) .....................................................3

*United States ex. rel. Scollick v. Narula,*
    215 F. Supp. 3d 26 (D.D.C. 2016) .......................................................11

*Spitz v. Proven Winners N. Am., LLC,*
    969 F. Supp. 2d 994 (N.D. Ill. 2013) ........................................................5

*United States ex rel. Szymoniak v. Am. Home Mortg. Servicing, Inc.,*
    679 F. App'x 299 (4th Cir. 2017) .............................................................9

*United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.,*
    No. CIV.A. 5:00CV-39-M, 2004 WL 2403114 (W.D. Ky. Sept. 30, 2004) ............8

*Trans Union LLC v. Credit Research, Inc.,*
    No. 00 C 3885, 2001 WL 648953 (N.D. Ill. June 4, 2001) ..........................5

*United States v. Anghaie,*
    633 F. App'x 514 (11th Cir. 2015) ..........................................................11

*United States v. Baylor Univ. Med. Ctr.,*
    469 F.3d 263 (2d Cir. 2006)...................................................................18

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,*
    525 F.3d 370 (4th Cir. 2008) .................................................................11

**Statutes**

18 U.S.C. § 1589(a) .................................................................................19

18 U.S.C. § 1592.................................................................................19, 20

18 U.S.C. § 1596.....................................................................................20

18 U.S.C. § 3731(b)(2) .............................................................................18

31 U.S.C. § 3730(b)(2) .............................................................................18

42 U.S.C. § 1651 *et seq.*..........................................................................20

Del. Code Ann. tit. 6, § 18-102 (2019) .........................................................5

**Other Authorities**

13 C.F.R. § 121.103(a)(5) (2018) ...............................................................10

Alan S. Gutterman, Business Transactions Solutions § 284:28 (2019)...........................4

Defendant AECOM National Security Programs, Inc. ("AECOM"), through counsel, submits this reply brief in support of its motion to dismiss relators' First Amended Complaint ("FAC") with prejudice and states as follows:

Despite a complaint totaling more than 100 pages and a 15-page opposition brief, relators have failed to articulate a legally cognizable theory for how AECOM is liable for the actions alleged in the FAC.[1]  It is undisputed that Defendant Global Linguist Solutions, LLC ("GLS") is a limited liability company, and it is black letter law that AECOM is not liable for the actions of GLS merely because it is a member in GLS.  To assert a claim against AECOM, relators must allege that AECOM is directly liable for actions it took or that AECOM is liable under an alter ego theory.  Relators have done neither.  Since relators cannot make any such allegations, they name a fictitious defendant, an unincorporated joint venture also named "Global Linguist Solutions," and argue that AECOM is vicariously liable for the actions of this entity.  Relators' implausible theory fails because it relies on strained textual interpretations and mischaracterizations of state law that cannot withstand the barest scrutiny.  More fundamentally, relators' theory fails because it is an attempt to pierce the corporate veil without alleging the necessary elements.

---

[1] Relators' opposition to AECOM's motion to dismiss only addresses some of the arguments raised by AECOM.  Relators' opposition does not address AECOM's arguments regarding their failure to state false certification claims under the False Claims Act ("FCA"), their failure to state claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), or the FCA's public disclosure bar.  Nor does relators' opposition brief incorporate by reference any of their other briefs with respect to these issues.  Accordingly, this Reply largely focuses on the specific arguments contained in relators' opposition to AECOM's motion.  To the extent relators' claims are still viable despite relators' failure to respond to AECOM's arguments, AECOM points to the arguments contained in its motion to dismiss and incorporates by reference the arguments set forth in DynCorp International, LLC's ("DI") and GLS' respective reply briefs.

Relators' failure to articulate a theory of liability as to AECOM is reason enough to dismiss all claims against AECOM. But relators' claims against AECOM warrant dismissal for several other reasons. Relators' claims under the FCA fail because they have not pled those claims with the particularity required by Federal Rule of Civil Procedure 9(b). Their FCA claims must also be dismissed under Rule 12(b)(6) as relators have not pled all requisite elements, including falsity, scienter and materiality. Relators' FCA claims related to Contract 2 are especially lacking given the dearth of relevant allegations.

Relators' FCA claims are also foreclosed by the public disclosure bar and the applicable statute of limitations. A prior Congressional hearing by the Commission on Wartime Contracting in Iraq and Afghanistan ("CWC"), numerous media reports, and prior litigation, including a case brought by many of the relators here, raised substantially the same allegations as the FAC, and relators are not original sources. Additionally, many of relators' claims are barred by the FCA's six-year statute of limitations. Indeed, AECOM was not even named as a defendant until March 25, 2016, approximately eight years after Contract 1 was awarded.

Relators' claims under the TVPRA fare no better as they are implausible and deficiently pled. Their allegations do not implicate AECOM, nor do relators even allege that GLS made threats, or took any other actions, with the intent to force them to continue working against their will. Relators' TVPRA claims are also preempted by the Defense Base Act ("DBA").

This case arose from a suit most of these same relators filed against GLS, DI, and AECOM in 2013. Relators have now had numerous opportunities to assert viable legal claims against AECOM. They have not done so and are clearly unable to do so. The FAC should be dismissed in its entirety, with prejudice.

I.     **RELATORS HAVE FAILED TO STATE A CLAIM AGAINST AECOM.**

Relators make few allegations against AECOM.  They do not allege that AECOM was the prime contractor or had any involvement in the performance of Contracts 1 or 2.  They do not allege that AECOM had any involvement in the preparation or submission of the proposals for Contracts 1 or 2.  They do not allege that AECOM was their employer.  Relators do not allege that AECOM engaged in *any* wrongdoing.  The handful of allegations leveled at AECOM primarily relate to AECOM's corporate structure.  Not one of these allegations is sufficient to extend liability to AECOM and relators' theories of corporate liability are flawed.[2]

A.     **Relators Fail to Plausibly Allege that AECOM is Liable as a GLS Joint Venture Member.**

Relators assert that AECOM is liable for the actions alleged in the FAC because of AECOM's relationship to GLS.  However, relators do not, and cannot, allege that the corporate veil should be pierced.  Instead, relators' claims against AECOM are largely based on their theory that there exists an unincorporated joint venture named "Global Linguist Solutions," and AECOM is liable for the actions of such an entity.  This theory is wholly implausible and is an improper attempt by relators to sidestep the fact that they are unable to pierce the corporate veil. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 367, 391 (D. Mass. 2008) (dismissing FCA claims against corporate parent because relator had not pled facts to support "piercing the corporate veil").

Relators' assertion that an unincorporated joint venture exists is without factual or legal support.  Relators cite instances where "Global Linguist Solutions" is referred to as a "joint venture" to argue that a limited liability company existed alongside an unincorporated joint

---

[2] The U.S. Government filed a Statement of Interest, *see* ECF No. 124, to address several issues raised by defendants in their motions to dismiss.  Notably, the Government did not address any of AECOM's arguments regarding relators' flawed theories of corporate liability.

venture and that AECOM and DI's references to GLS as a "joint venture" could not be "accidental." *See* Opp'n to DI Mot. to Dismiss at 3-5 (ECF No. 121) ("DI Opp'n"); Opp'n to AECOM Mot. to Dismiss at 2-4 (ECF No. 122) ("AECOM Opp'n").  However, relators have provided no factual support for their suggestion that these references to a "joint venture" were not "accidental" and have largely ignored that AECOM and DI took the affirmative steps of establishing GLS as a Delaware limited liability company.  Moreover, relators are being willfully obtuse in their interpretation of "joint venture."  It is obvious that the phrase "joint venture" can describe a limited liability company.  *See* Alan S. Gutterman, Business Transactions Solutions § 284:28 (2019) (stating that joint ventures may be "formed, organized, and operated under one of the recognized forms of business organizations such as corporations, partnerships and limited liability companies"); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 288 (Del. 1999) (the parties "agreed to undertake a joint venture that was to be carried out using a limited liability company as the vehicle").  AECOM's 10-K submissions, which relators cite repeatedly, *see* AECOM Opp'n at 2-4, illustrate this point.  A plain reading of these documents makes clear that "joint venture" is being used colloquially to describe business ventures undertaken with other companies and not the specific legal form of each such entity.

Relators also suggest that "GLS" was used without the descriptors "limited liability company" or "LLC," revealing the existence of an unincorporated joint venture.  DI Opp'n at 4. But relators themselves acknowledge that "[d]uring contract performance, GLS was at times referred to as a limited liability company . . . " FAC ¶ 22.[3]  Relators also misapprehend

---

[3] Relators also cite extensively to the CWC hearings, *see* FAC ¶¶ 164-77, and GLS was referred to as an "LLC" in the opening statement of those hearings.  *See* AECOM Mot. to Dismiss at 22 n. 16 (ECF No. 80) ("AECOM MTD") (providing link to CWC opening statement, hearing transcript, and witness statements).

Delaware law.  They interpret Delaware law as requiring the "use of the words 'limited liability company' or 'LLC'" in order to "acquire the limitation of liability that characterizes a limited liability company."  DI Opp'n at 4.  The law only requires that the "name of each limited liability company as set forth *in its certificate of formation*" shall contain the words "limited liability company" or "LLC."  Del. Code Ann. tit. 6, § 18-102 (2019) (emphasis added).[4]  GLS' certification of formation, as relators are aware, included "LLC" in its name and specifically stated that GLS is a limited liability company.  *See* AECOM MTD at 6 n. 5.

"Courts are generally reluctant to ignore the corporate form, and so place a high burden on a party asking us to do so."  *Trans Union LLC v. Credit Research, Inc.*, No. 00-C-3885, 2001 WL 648953, at *8 (N.D. Ill. June 4, 2001).  But, this is what relators are essentially asking this Court to do—ignore that GLS was established as a limited liability company and hold AECOM liable for GLS' alleged actions.  Relators' implausible interpretations of a handful of statements fall far short of meeting the necessary threshold to extend liability to AECOM.[5]  *See Spitz v. Proven Winners N. Am., LLC*, 969 F. Supp. 2d 994, 1004 (N.D. Ill. 2013) ("Plaintiff points to no evidence that would warrant ignoring the limited liability status of the defendants or treating their relationship as a joint venture in which the acts of one party are binding on all parties."); *Leber v. Universal Music & Video Distribution, Inc.*, 225 F. Supp. 2d 928, 937 (S.D. Ill. 2002)

---

[4] Relators' reliance on *C&M Café v. Kinetic Farms, Inc.*, is also misplaced as that case simply reiterates that Delaware law requires the words "limited liability company" or "LLC" to be on an LLC's *certificate of formation*.  2016 WL 6822071 (N.D. Cal. Nov. 18, 2016).

[5] Relators seek discovery on this issue, *see* AECOM Opp'n at 4, but they are not entitled to conduct a fishing expedition on such an implausible theory of liability.  *See Coffman v. Cent. Bank & Tr. Co.*, No. 5:11-CV-00388-KKC, 2012 WL 4433293, at *5 (E.D. Ky. Sept. 25, 2012) ("The Court will not permit discovery on an implausible and speculative theory"); *Bill Salter Advert., Inc. v. City of Brewton, Ala.*, 486 F. Supp. 2d 1314, 1320 (S.D. Ala. 2007) ("[T]he City will not be afforded leave to conduct preliminary discovery in what is, in effect, a fishing expedition seeking evidence to support a facially implausible theory.").

(granting summary judgment for defendants and stating that "[i]t is true that Universal and Panasonic called MUMS a joint venture before MUMS was formed…[t]he plaintiffs ignore, however, the clear fact that after its creation MUMS became a *limited liability company* under the Delaware Limited Liability Company Act.").

In any case, even if relators are correct about the existence of an unincorporated joint venture, which they are not, relators have not adequately pled the actions of this purported unincorporated joint venture such that AECOM can discern what relators are claiming the joint venture did.  Relators have specifically recognized the existence of Global Linguist Solutions, LLC by naming it as a defendant and describing it as "a Delaware-registered limited liability company."  FAC ¶ 19.  But, relators made no effort in the FAC to distinguish the acts of GLS, the unincorporated joint venture, and GLS, the limited liability company and prime contractor under Contracts 1 and 2.  *See id.* ¶ 22 ("Allegations herein against 'GLS' are intended to encompass both entities.").  AECOM raised this issue in its motion to dismiss, *see* AECOM MTD at 7, but relators failed to respond.  This is not merely an academic issue.  Under relators' theory, AECOM would be liable only for the actions of GLS the unincorporated joint venture, but the FAC is unclear as to what those actions are.  This fails to meet the pleading requirements of Rule 8(a).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that Rule 8(a)(2) requires the pleader "*to give the defendant fair notice of what the . . . claim is.*") (emphasis added) (citations and quotation marks omitted).

In sum, relators failed to allege a plausible theory under which AECOM is liable for the actions of GLS and, even if relators' assertion regarding the creation of an unincorporated joint venture is accepted as true, relators have failed to meet the pleading requirements of Rule 8(a).

### B.     Relators Fail to Allege that AECOM is Otherwise Liable for the Actions of GLS.

In their opposition brief, relators make additional attempts to hold AECOM liable for the actions alleged in the FAC even though AECOM is barely mentioned.  First, relators contend that AECOM is "directly liable" for the false claims alleged in the FAC because AECOM "profited from" and had "knowledge of" the false claims allegedly submitted.  AECOM Opp'n at 4-5.  However, relators have not alleged that AECOM was involved, directly or indirectly, in the purported submission of those false claims.  Relators have not even made factual allegations supporting their contention that AECOM "profited from" or had "knowledge of" any false claims.  Nor can relators simply rely on their allegations against "defendants" because an "undifferentiated assertion of fraud against multiple defendants is prohibited by Rule 9(b)." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009).

To the extent relators are alleging that AECOM is liable because it received profits from GLS as a parent company, that corporate relationship is insufficient to extend FCA liability.  "It has been established that merely being a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation."  *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59–60 (D.D.C. 2007) (citation and quotation marks omitted).  Nor does simply having knowledge of an alleged false claim, even if sufficiently pled, lead to an FCA violation.  "[M]ere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish 'causation' under the FCA."  *United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc*., No. CIV.A. 5:00CV-39-M, 2004 WL 2403114, at *33 (W.D. Ky. Sept. 30, 2004) (citation omitted).

Second, relators contend that AECOM is liable under the TVPRA because "knowledge" of the purported violations was imputed to AECOM through its "partnership with DI and its status as a joint venturer in GLS." AECOM Opp'n at 5-6. Relators' theory of vicarious liability relies upon their contention that GLS is an unincorporated joint venture. As discussed above, this contention is baseless and relies upon implausible assertions. Since relators have not otherwise made any allegations that AECOM had "knowledge" of the purported TVPRA violations, these TVPRA claims must be dismissed.[6]

## II. RELATORS HAVE FAILED TO STATE ANY FCA CLAIMS.

Relators' failure to allege any direct misconduct by AECOM or otherwise set forth a valid theory of liability for AECOM is grounds for dismissal and this Court need not go any further in its analysis. However, relators' claims fail for alternative reasons as well. Relators have failed to adequately state a claim under the FCA, and their claims are precluded by the FCA's public disclosure bar and statute of limitations.

### A. Relators Have Failed to State an FCA Claim under Rules 9(b) and 12(b)(6).

Although AECOM argued in its motion to dismiss that all of relators' FCA claims should be dismissed, relators' opposition addresses only the claim predicated on fraudulent inducement. Relators fail to state a fraudulent inducement claim under the FCA because they neglect to plead with the required particularity and fail to allege objective falsehoods, materiality, and scienter. For similar reasons, relators have failed to state their other FCA claims. Accordingly, relators' FCA claims warrant dismissal for failure to state a claim.[7]

---

[6] Relators also suggest that "knowingly" in the TVPRA includes acting with "deliberate ignorance" or with "reckless disregard." AECOM Opp'n at 5-6. Not so. The FCA defines "knowingly" to include deliberate ignorance and reckless disregard but the TVPRA does not.

[7] The Government has proffered an interpretation of the FCA, as set forth in its Statement of Interest. *See* ECF No. 124. The Government's interpretation of the FCA is no more authoritative than the interpretations of private FCA litigants. The Government routinely files

1.      *Relators have failed to state a claim of fraudulent inducement*

Relators' fraudulent inducement claim essentially asserts that GLS represented to the Government that it would use small business subcontractors on Contract 1 when in fact those companies were "affiliated" with GLS such that they could not be considered "*bona fide* independent small businesses." AECOM Opp'n at 7-8. Relators also contend that, even prior to the award of Contract 1, GLS "did not intend to abide by the terms of the solicitation and Contract 1." FAC ¶ 85. Relators do not mention AECOM in any of their fraudulent inducement allegations and, in any case, relators' conclusions are not supported by specific factual allegations and are insufficient to state a claim.

First, relators have failed to plead their fraudulent inducement claims with particularity. Federal Rule of Civil Procedure 9(b) requires relators to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Szymoniak v. Am. Home Mortg. Servicing, Inc*., 679 F. App'x 299, 301 (4th Cir. 2017). This includes identifying the "contents of the false representations." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Here, relators do not identify any specific fraudulent statements or representations that GLS made to the Government in connection with its bid for Contract 1. By failing to identify actual false statements or representations, or even provide other relevant details, relators have not met the pleading requirements of Rule 9(b).

---

statements of interest but the courts need not and do not necessarily accept those statements as accurate interpretations of the law. *See, e.g.*, *United States ex rel. Lopez v. Strayer Educ., Inc.*, 698 F. Supp. 2d 633, 642 (E.D. Va. 2010) (rejecting government's argument and holding public disclosure bar precluded relator's claims). Notably, the Government does not address any of AECOM's primary arguments regarding its liability for GLS' alleged actions and has expressly stated that it is not addressing the merits of relators' claims. But under any reading of the FCA, relators fail to state a claim.

Second, the types of purported misrepresentations identified by relators are not objective falsehoods. Relators suggest that any representations GLS made about the small businesses with which it teamed must have been false because its teaming agreements allegedly "converted" the small businesses into "affiliates" of GLS.[8]  AECOM Opp'n at 7. Notwithstanding relators' failure to plead with particularity, statements regarding the subcontractors' affiliate status are not actionable under the FCA because they are not objectively false. Determining whether businesses are "affiliated" with one another under SBA regulations involves a multi-factor legal analysis. *See* 13 C.F.R. § 121.103(a)(5) (2018) ("In determining whether affiliation exists, SBA will consider the totality of the circumstances . . ."). Relators argue that the terms of GLS' purported teaming agreements with its small business subcontractors resulted in affiliation. AECOM Opp'n at 7. However, this is merely relators' legal conclusion based on their analysis of the terms of a single teaming agreement and need not be accepted as true.[9]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (legal conclusions "are not entitled to the assumption of truth"). Relators' legal conclusion that the businesses were GLS affiliates does not substantiate their claim. "[D]ifferences in interpretation growing out of a disputed legal question are . . . not false under the FCA."[10]  *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 377 (4th Cir. 2008) (citation omitted).

---

[8]  Relators mischaracterize the terms of the Shee Atika teaming agreement, FAC ¶ 86, to support their suggestion that GLS had "so much control" over the small business subcontractors. *See* AECOM Opp'n at 7. Although relators refer to the Shee Atika teaming agreement in the FAC, they do not attach it to their complaint. Defendant Shee Atika Languages attached the referenced teaming agreement to their Motion to Dismiss. *See* Ex. 1, Shee Atika Mot. to Dismiss (ECF No. 129). A review of the Shee Atika agreement reveals that Shee Atika was an independent company and retained numerous responsibilities under the teaming agreement. *Id.*

[9]  Relators even acknowledge that some teaming agreements "might be appropriate in a subcontract between a small business and a prime contractor." FAC ¶ 86.

[10]  The Government argues that a false claim need not be "objectively false." Statement of Interest at 8. However, even after *Escobar*, courts have asked whether alleged false statements

Third, with respect to materiality, the FAC simply asserts that "Defendants" made "material" representations in their bid for Contracts 1 and 2.  FAC §§ IV & V.  This is insufficient.  Relators do not allege that Contract 1 was a small business set-aside.  The involvement of small businesses was just one of many criteria outlined in the solicitation and relators merely reiterate this point.  AECOM Opp'n at 9 (stating that small business participation was a "subfactor").  Alleging that the Government considered GLS' use of small businesses in its overall assessment of their bid for Contract 1 is not enough to conclude that the precise manner in which they managed their small business subcontractors was material to the Government.  *See United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) (even where regulatory compliance is a condition of payment, that is a "'relevant' though 'not dispositive' factor in determining materiality." (quoting *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016))).

Fourth, Relators fail to allege scienter.  They largely rely on their baseless legal theory regarding the joint venture status of GLS to impute scienter to AECOM.  AECOM Opp'n at 10-

---

were objectively false*. See, e.g., United States ex rel. Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 (9th Cir. 2018), *cert. denied sub nom. United States ex rel. Berg v. Honeywell Int'l, Inc.*, No. 18-1030, 2019 WL 485403 (U.S. Apr. 1, 2019); *United States ex rel. Complin v. N.C. Baptist Hosp.*, No. 1:09CV420, 2019 WL 430925, at *7 (M.D.N.C. Feb. 4, 2019).  Indeed, the cases cited by the Government reinforce that liability under the FCA for false statements related to small business status requires objective falsehoods.  *See United States v. Anghaie*, 633 F. App'x 514 (11th Cir. 2015) (alleged fraud regarding the identity of certain personnel and the number of employees); *United States ex rel. Longhi v. United States*, 575 F.3d 458 (5th Cir. 2009) (alleged fraud regarding date of incorporation, identity of key personnel, type of facilities and equipment, and prior work misrepresented); *United States ex. rel. Scollick v. Narula*, 215 F. Supp. 3d 26 (D.D.C. 2016) (alleged fraud regarding company's past performance and employees).  Although, as the Government asserts, "half-truths" may be actionable under the FCA, relators still bear the burden to allege actual, objective facts about which defendants allegedly told such "half-truths."  Whether the standard is "objective falsehood" or "half-truths," the alleged representations here could not be "false" under the FCA because they involve conclusions of law under SBA regulations, not matters of fact that can be half true or half false.

11.  With respect to GLS, relators assert that the mere fact that GLS entered into teaming agreements is evidence of scienter.  *Id.* at 10.  As discussed above, whether the teaming agreements "converted" the small business subcontractors into affiliates of GLS is a legal conclusion—not a factual allegation.  Such a legal conclusion cannot support relators' bare assertion that GLS "knowingly" submitted false claims.

Relators also state that GLS "knew about the false claims being submitted for work purportedly done by the SBA defendants – no work was actually being done under Contract 1 by these entities."  *Id.*  Relators, however, do not provide specific allegations to support the conclusion that the small businesses did "no work."  Instead, they allege that under the teaming agreements, GLS took over many of the small businesses' "management functions."  FAC ¶ 89.  Yet relators do not claim that the small businesses' "management functions" were material to the award of Contract 1.  In sum, relators attempt to cobble together various allegations and legal conclusions to paint a picture of fraud, but they have not provided a single *factual* misrepresentation, pled with particularity, that was made knowingly and was material to the Government's decision to award Contract 1.  Their claim that GLS fraudulently induced the Government into awarding Contract 1 thus fails.

Relators also unconvincingly claim that GLS fraudulently induced the Government to award Contract 2.  They rely on their allegations regarding Contract 1 to support this claim.  AECOM Opp'n at 9.  But Contract 2 is distinct from Contract 1 and relators do not provide any facts regarding GLS' proposal for Contract 2.  They merely assume "upon information and belief" that "GLS falsely represented that it had complied with Contract 1 . . . in submitting its proposal for Contract 2."  FAC ¶¶ 91-92.  Two threadbare allegations made on information and belief are wholly inadequate to state a claim under the FCA.  *See United States ex rel. Moore v.*

*Cardinal Fin. Co., L.P.*, No. CV CCB-12-1824, 2017 WL 1165952, at *13 (D. Md. Mar. 28, 2017) ("Most of the allegations against Cardinal and Wells Fargo in the FAC are supported only on 'information and belief,' which is not sufficient."); *United States ex rel. Martinez v. Va. Urology Ctr., P.C.*, No. 3:09-CV-442, 2010 WL 3023521, at *5 (E.D. Va. July 29, 2010) ("The submission of claims containing material misstatements is a 'central question' in an FCA case . . . under Rule 9(b), this cannot be left merely to . . . 'information and belief.'" (quoting *Harrison*, 176 F.3d at 785)).  Relators' fraudulent inducement claim as to Contract 2 thus also fails as a matter of law and should be dismissed.

   2. *Relators have failed to otherwise state an FCA claim*

   Relators' remaining allegations regarding purported noncompliance with SBA requirements, NISPOM regulations, Kuwaiti law, and TVPRA requirements similarly fail to state a claim.  Relators do not reference AECOM in any of these allegations.  Moreover, as with their fraudulent inducement theory, relators fail to plead these claims with particularity.  Relators must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *United States ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 526 (D. Md. 2006) (quoting *Harrison*, 176 F.3d at 784).  Relators appear primarily to rely on the volume of their allegations to suggest that their claims were pled with particularity.  *See* Opp'n to GLS Mot. to Dismiss at 6 (ECF No. 120) ("GLS Opp'n") ("Over the expanse of a 110-page 593 paragraph complaint, the 29 Relators provide an extraordinary amount of detail.").  But while relators have drafted a long complaint, they have failed to plead their core allegations of fraud with particularity.  To avoid addressing the lack of substance in the FAC, relators mischaracterize AECOM's arguments.  AECOM does not, as relators claim, assert that Rule 9(b) requires such comprehensive information as "the substance and amount of each invoice" and "proof of scienter for each GLS submission for

payment." GLS Opp'n at 8. Rule 9(b) does not require every detail of every submission to be pled, but it does require *some* specificity. *See, e.g.*, *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (relators must either describe "the time, place, and contents" of the specific false claims submitted to the Government for payment or "allege a pattern of conduct" that necessarily would have resulted in the submission of false claims) (internal citation and quotation marks omitted). Rule 9(b)'s heightened standards are particularly important in FCA cases. *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (purposes of 9(b) are particularly important in FCA cases "given the potential consequences flowing from allegations of fraud by companies who transact business with the government"); *United Airlines*, 912 F.3d at 197 ("Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and 'quasi-criminal nature' of FCA liability." (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006)). Relators have fallen far short of providing the requisite specificity here.

Not only do they fail to plead with particularity but, among other things, relators do not allege objective falsehoods. *See, e.g.,* FAC ¶ 95 (alleging that GLS "seized for itself all meaningful performance of all the tasks necessary to perform Contract 1" but failing to explain how this made any specific, factual statements to the Government untrue). Nor do they allege facts to support their conclusion that that the purported false representations are material. Relators largely allege that had the Government been aware of the alleged false statements and certifications it "may not have paid any claims submitted pursuant to either contract." *See* FAC ¶¶ 533-34; *see also* GLS Opp'n at 20, 28-30. They fail to appreciate that representations "must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Servs., Inc.,* 136 S. Ct. 1989 at 2002. Materiality must be

tethered to the factual allegations in the complaint and relators cannot merely allege "that the Government would have the option to decline to pay if it knew of [the alleged] noncompliance[,]" as they have done here.  *Id.* at 2003.

Relators' allegations with respect to Contract 2 are even more deficient.  Relators conclude that "[a]ll invoices for payment submitted by GLS for payment under Contract 2 were also false claims because GLS was ineligible to perform that contract due to its violations" while performing Contract 1.  FAC ¶ 518.  Relators provide no factual allegations regarding claims GLS submitted in connection with Contract 2.  Moreover, this theory relies on relators' contention that to obtain Contract 2, GLS fraudulently misrepresented its performance on Contract 1 to the Government.  However, that conclusion is insufficiently pled on "information and belief" and is unsupported by any specific allegations regarding GLS's bid for Contract 2. FAC ¶¶ 91-92.  Relators thus fail to state a claim under the FCA under any theory.

**B.     The Public Disclosure Bar Prohibits Relators' Claims.**

Key allegations in this case arise from prior public disclosures including 2009 Congressional hearings by the CWC, prior litigation, and media reports.  Relators argue that these disclosures did not reveal the "fraud" that they allege here, but the factual allegations are substantially the same.  The test is whether the underlying facts that would constitute fraud have been disclosed, not whether relators' theories regarding fraud and illegality were previously explained.  *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (relator must "contribute[] information—distinct from what was publicly disclosed—that adds in a significant way to the essential *factual* background: 'the who, what, when, where and how of the events at issue.'") (emphasis added).  Here, the prior public disclosures revealed the facts underlying relators' claims of fraud.  At the CWC hearings, for

example, the Government questioned GLS' subcontractor management model and addressed allegations that subcontractors had little involvement in the contract. *See* AECOM MTD at 22.

Relators are also not original sources of the facts underlying their claims. As an initial matter, although relators' claims implicate both the pre- and post-amendment versions of the public disclosure bar, they only argue that they are original sources under the post-amendment version. *See* DI Opp'n at 23-27. They thus concede that they do not qualify as original sources under the pre-amendment version of the public disclosure bar. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to this argument, the plaintiff abandons any discriminatory discharge claim."). And even if they have not so conceded, relators clearly do not have the "direct and independent" knowledge required to be original sources under the pre-amendment statute as they did not witness most of the alleged conduct and appear to base their information off of public disclosures and research.

In any case, relators are not original sources under the post-amendment version of the public disclosure bar. Relators' allegations are not "independent of" nor do they "materially add to" the public disclosures because relators' allegations in the FAC largely focus on details unrelated to the core allegations of fraud (such as the individual experiences of relators living in Kuwait) and do not add any relevant information to what was previously publicly disclosed. *See* AECOM MTD at 27-28.

It is unsurprising that relators do not qualify as original sources as they were linguists; they were not involved in the proposal process, the invoicing process, or management of Contracts 1 or 2. Nor is it clear in the FAC or the opposition briefs how relators would have made their core fraud allegations but for the various public disclosures identified.

C.      **Relators' FCA Claims are Barred by the Statute of Limitations.**

Relators' FCA claims involving Contract 1 are largely focused on actions alleged to have occurred more than 6 years before relators sued AECOM.  *See* GLS Opp'n at 14.  In its Statement of Interest, the Government asserts that the statute of limitations cannot be triggered by an alleged false statement.  Statement of Interest at 15-16.  This is incorrect for fraudulent inducement claims where no specific false claims are alleged.  *See United States ex rel. Dugan v. ADT Sec. Servs., Inc.*, No. CIV.A.DKC 2003-3485, 2009 WL 3232080, at *3 (D. Md. Sept. 29, 2009) (finding relator's fraudulent inducement claim was barred by the statute of limitations because "all of the conduct on which [the] allegation is based occurred" outside the limitations period and plaintiff did not otherwise identify a specific false claim).  Moreover, relators do not dispute that many of the allegedly false statements they claim were included in GLS' proposal for Contract 1 were made more than 6 years ago.  Instead, relators attempt to rely on the FCA's 3-year equitable tolling provision to justify their belated claims against AECOM.  *See* GLS Opp'n at 15.  Even under that tolling provision, however, relators' claims regarding Contract 1 would be time-barred because relevant Government officials knew or should have known about these allegations as early as 2009, following the CWC hearings.  As relators filed their initial complaint more than three years after these hearings, the FCA's equitable tolling provision is unavailable to them.[11]

With respect to the addition of AECOM as a defendant in the FAC, relators acknowledge

---

[11] AECOM noted in its motion to dismiss that the issue of whether relators could rely on the tolling provision in 18 U.S.C. § 3731(b)(2) was before the Supreme Court.  AECOM MTD at 30 n. 26.  Since the filing of AECOM's motion, the Supreme Court decided *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1511 (2019), holding that the FCA's tolling provision applies even in cases where the Government has declined to intervene.  As noted above, relators' claims regarding Contract 1 are still time-barred even in light of the Supreme Court's recent holding.

17

that AECOM did not receive notice of the suit until after the FAC was filed. AECOM Opp'n at 12.[12] This lack of notice prevents relators' claims against AECOM from relating back to their original complaint, which does not name AECOM as a defendant. The FCA specifically allows a timely complaint to satisfy the relevant statute of limitations for named defendants even though those defendants do not receive notice. *See* 31 U.S.C. § 3730(b)(2) ("[T]he complaint ... shall not be served on the defendant until the court so orders."). But, as one district court found, "[t]here is no such provision in the statute that supports depriving a party not named in the filed complaint of notice." *United States ex rel. Omni Healthcare Inc. v. McKesson Corp.*, No. 12-CV-6440 (NG) (LB), 2019 WL 438357, at *12 (E.D.N.Y. Feb. 4, 2019) (dismissing as untimely FCA claims asserted against five subsidiaries who were first added as defendants in a second amended complaint). Indeed, the FCA's "statute of limitations, like the first-to-file bar, encourages relators to come forward promptly . . . [t]his purpose would be undermined if a relator were permitted to add additional defendants years later . . . ." *Id.*

## III.    RELATORS HAVE NOT STATED A CLAIM UNDER THE TVPRA.

Relators have not alleged that AECOM was their employer at any time. Relators have not alleged that AECOM engaged in *any* violation of the TVPRA nor can they hold AECOM vicariously liable for the alleged conduct of GLS. Moreover, relators' TVPRA claims cannot survive because relators have failed to state a claim.[13]

---

[12] The Government's Statement of Interest also misses the mark here. AECOM is not suggesting that "amended complaints cannot relate back to the original sealed filing" in any circumstances. Statement of Interest at 16. AECOM is merely stating that the addition of AECOM in the FAC deprived AECOM of the requisite notice. *See United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006) ("[A]ny relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice.").

[13] Relators devote a portion of their opposition to addressing the availability of restitution as a remedy to civil litigants in TVPRA cases. *See* AECOM Opp'n at 15-16. This issue is largely academic as relators have not alleged that they failed to receive wages. And this discussion highlights the absurdity of relators, who were well-paid and sophisticated, asserting TVPRA

A.      **Relators Have Failed to State a Claim Under the TVPRA.**

Although relators claim that they were subject to forced labor under the TVPRA, 18

U.S.C. § 1589(a), they do not allege that GLS threatened them or used any force to "obtain[]

the[ir] labor or services."  Instead, relators claim that GLS abused Kuwaiti legal processes.  GLS

Opp'n at 23.  Even then, however, they do not explain how such alleged abuse caused relators to

continue forcibly working for GLS.  Indeed, relators were specifically told that they could *not*

continue to work on GLS' contract.  *See* FAC ¶ 146.  Moreover, relators were highly-paid,

highly-skilled workers who worked in combat zones voluntarily, and many had prior experience

working there.  *See id.* ¶ 242.  Unlike the typical TVPRA claimant, relators do not exhibit any

"particular vulnerabilities" and do not provide any allegations of forced labor.  *See Muchira v.

Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017), *as amended* (Mar. 3, 2017).

B.      **18 U.S.C. § 1592 Does Not Apply Extraterritorially.**

Relators' TVPRA claims under 18 U.S.C. § 1592 also fail because that section does not

apply to conduct occurring outside of the United States.  Congress explicitly extended

extraterritorial jurisdiction to six other sections of the TVPRA but excluded Section 1592.  *See*

18 U.S.C. § 1596.  None of the canons of statutory interpretation cited by relators change this

fact.  *See* AECOM Opp'n at 14.  If Congress sought to apply Section 1592 beyond U.S. borders,

it would have done so, as it did with so many other parts of the statute.  *Dean v. United States*,

556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a

statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion.") (internal citation and

---

claims.  Indeed, some of the relators continued working with GLS long after the events alleged in
the FAC occurred.  *See, e.g.,* FAC ¶ 414 ("Fikri now works for GLS in Jordan."); *id.* ¶ 455
("Kabbaj is worked [*sic*] for GLS in Jordan until February 2016").

quotation marks omitted). Instead, it restricted that provision to violations committed domestically. Relators' argument that GLS' conduct in Kuwait violated Section 1592 thus fails.

### C. The Defense Base Act Preempts Much of Relators' TVPRA Claims.

Finally, many of relators' TVPRA allegations are not actionable because they are preempted by the DBA. The DBA is the exclusive remedy for injuries suffered while working on a contract abroad with the U.S. military. *See* 42 U.S.C. § 1651 *et seq.*; *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1124-27 (D.C. Cir. 2015). Relators argue that their claims are not preempted because *Brink* held that the DBA preempted RICO, not the TVPRA. AECOM Opp'n at 11-12. Relators do not respond to AECOM's legal arguments or the text of the DBA and fail to explain why the reasoning in *Brink* does not apply with equal force here. Their claims relating to emotional distress and physical injuries suffered while they worked in Kuwait or due to their work in Kuwait are thus preempted.

### IV. CONCLUSION

For the foregoing reasons, AECOM's Motion to Dismiss should be granted, and the First Amended Complaint should be dismissed in its entirety with prejudice.

Dated: May 30, 2019

Respectfully submitted,

/s/ Craig Smith
Craig Smith (D. Md. Bar No. 17938)
Roderick L. Thomas (*pro hac vice*)
P. Nicholas Peterson (*pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: rthomas@wileyrein.com

*Counsel for AECOM National Security Programs, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of May 2019, a true and correct copy of the

foregoing was served via the Court's CM/ECF system to:

Charles S Fax
RIFKIN LIVINGSTON LEVITAN AND
SILVER LLC
7979 Old Georgetown Rd Suite 400
Bethesda, MD 20814
Email: cfax@rlls.com

Joseph A Hennessey
THE LAW OFFICE OF JOSEPH
HENNESSEY LLC
2 Wisconsin Circle Suite 700
Chevy Chase, MD 20815
Email: jhennessey@jahlegal.com

Timothy Newlyn Mathews
CHIMICLES AND TIKELLIS LLP
361 W Lancaster Ave
Haverford, PA 19041
Email: tnm@chimicles.com

Andrew W. Ferich
Steven A. Schwartz
CHIMICLES SCHWARTZ KRINER AND
DONALDSON-SMITH LLC
361 W. Lancaster Ave.
Haverford, PA 191041
Email: awf@chimicles.com
sas@chimicles.com

Liesel Johanna Schopler
RIFKIN WEINER LIVINGSTON
LEVITAN AND SILVER LLC
225 Duke of Gloucester Street
Annapolis, MD 21401
12024893879
Fax: 14102691235
Email: lschopler@rlls.com

*Counsel for Plaintiff-Relators*

Molissa Heather Farber
U.S. ATTORNEY'S OFFICE
District of MD
36 S Charles St 4th Fl
Baltimore, MD 21201
Email: molissa.farber@usdoj.gov

*Counsel for United States of America*

Jonathan A. Direnfeld
William F. Stute
David Rhinesmith
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Email: jdirenfeld@orrick.com
wstute@orrick.com
drhinesmith@orrick.com

*Counsel for Global Linguist Solutions, LLC*

Jan Paul Miller
Claire Schenk
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
Email: cschenk@thompsoncoburn.com

*Counsel for DynCorp International LLC*

<u>/s/ Craig Smith</u>
Craig Smith (D. Md. Bar No. 17938)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: cscmith@wileyrein.com

*Counsel for AECOM National Security
Programs, Inc.*