**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

---

UNITED STATES OF AMERICA *ex rel.*
ELGASIM MOHAMED FADLALLA, *et al.,*

                Plaintiffs,

     v.

DYNCORP INTERNATIONAL LLC, *et al.,*

                Defendants.

Case No.  8:15-cv-01806-PX

---

**DEFENDANT GLOBAL LINGUIST SOLUTIONS, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS RELATORS' AMENDED COMPLAINT WITH PREJUDICE**

Pursuant to this Court's Order of February 28, 2019 (Dkt. 89), Defendant Global Linguist Solutions, LLC ("GLS") submits this Reply in support of its Motion to Dismiss Relators' First Amended Complaint with Prejudice and Memorandum in Support (Dkt. 85) (GLS "Motion to Dismiss" or "MTD") and specifically in response to Relators' Opposition thereto (the "Opposition" or "Opp.") (Dkt. 120).

## INTRODUCTION

The length of Relators' Opposition cannot hide the following: their claims are barred by the public disclosure doctrine and the factual allegations in their First Amended Complaint (the "Complaint" or "FAC") (Dkt. 8) fail the pleading standards of Rules 8 and 9(b).[1]

---

[1] Because Relators incorporate by reference their oppositions to other motions to dismiss, Relators exceeded their page limits. For example, the Opposition does not respond to GLS' public disclosure bar argument or GLS' argument regarding the reach of the TVPRA.  GLS asks that this Court consider only the arguments made in the Opposition and disregard those arguments incorporated by reference.

A Congressional hearing, like the one concerning the performance of GLS on the contracts at issue, can give rise to the public disclosure bar. But, according to Relators, this hearing could not have been sufficient because it did not address the allegations of fraud as stated in their Complaint nor cover every fact they allege (*i.e.* their "subcontracting claims").[2] Opposition to DynCorp International LLC's Motion to Dismiss (Dkt. 121) ("DI Opp.") at 16.[3]

The public disclosure bar, however, does not require such exactitude. *United States ex rel. Black v. Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x 285, 294 (4th Cir. 2012) ("There is no requirement under our case law that the public disclosure matches *with specificity* the allegations made by a *qui tam* relator"); *United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 257 (4th Cir. 2012). The only question is whether the facts disclosed are sufficient to give notice of the transactions and information underlying the allegation—*i.e.* information "from which an investigation could have begun or developed." *Collegiate Funding Servs., Inc.*, 469 F. App'x at 257. As to Relators' subcontracting claims, a government auditor testified that the "subcontractors do not hire, manage, *or interact with the linguists* other than to pay the amount stipulated by GLS." Linguist Support Services in Theater: Hearing Before the Commission on Wartime Contracting in Iraq and Afghanistan (Aug. 12, 2009) (the "CWC Hearing"), Tr. at 7 (emphasis added). Similarly, as to Relators' "labor claims," the media reports meet even Relators' precise (and incorrect) public disclosure bar standard. These articles practically mirror the information Relators plead in their Complaint. And there is no legal consequence to Relators' assertions that they now use different words to describe the same alleged events.

---

[2] Relators claims fall into two general buckets, as described in GLS' Motion to Dismiss.

[3] Relators responses *to GLS*' arguments on the public disclosure bar (in GLS' Motion to Dismiss) are only found in their opposition to the motion filed DynCorp International LLC.

Nor are Relators original sources. The Amended Complaint, which repeatedly relies on "information and belief" to plead basic elements, proves that alone. Relators' Opposition effectively concedes that they cannot meet the original source standard under the pre-2010 FCA. DI Opp. at 23 ("Relators are original sources *pursuant to the amended FCA*" (emphasis added)). Under the post-2010 bar, Relators do not actually plead what information (as opposed to their legal theories and conclusory allegations) they have that is independent of and materially adds to the public disclosure.

Relators' First Amended Complaint fails to plead any FCA claims with particularity. For example, while the Opposition discusses Relators' fraud in the inducement claims for eight pages, nowhere do Relators plead what GLS said to induce the Contract or what specific provision was implicated by that false statement.[4] This is the foundation of a fraud allegation. That a contract may have been performed badly or even breached does not show fraud. As another example, Relators have not pled the actual submission of specific false claims. And rather than clarify, their Opposition argues they should not be required to plead this essential element. Opp. at 8-9. Further, in summarizing their Complaint—the who, what, when, where, and how of their pleadings—the Opposition only confirms what Relators have *not* pled and shows they are unable to articulate how the facts in their Complaint support a coherent theory of fraud. Opp. at 6. Instead, Relators mischaracterize their factual allegations and assume GLS had constructive knowledge. This fails under Rule 9(b).

Relators' other claims also fail. Relators have not pled what a National Industrial Security Program Operating Manual ("NISPOM") violation in this case could be nor have they pled any

---

[4] "Contract" as used herein refers to the Contract for Translation and Interpretation Management Services, "Contract 1" W911W4-08-D-0002 or the "TIMS Contract."

violation of the same, let alone a fraud on that basis. Relators have not pled any Trafficking Victims Protection Reauthorization Act ("TVPRA") violation,[5] let alone pled an FCA claim on that basis. Given these numerous failures, this Court should dismiss the Complaint for failing to present a well-pled FCA claim or a violation of the TVPRA.

Finally, to the extent the government's Statement of Interest ("SOI") (Dkt. 124) actually addresses the arguments presented, the standards articulated by the government and the cases it cites only further explain exactly why Relators' Complaint should be dismissed.

## ARGUMENT

**I.    Relators' Claims Fail Under the Public Disclosure Bar.**

The public disclosure bar applies because, as the Opposition effectively admits, the facts underlying Relators' claims were publicly disclosed.[6]

### A.    Relators Do Not Articulate the Correct Public Disclosure Standard.

Relators do not dispute that the Congressional hearing at issue here, the CWC Hearing, could give rise to the public disclosure bar.[7] Further, Relators do not appear to dispute that facts underlying their allegations were disclosed at that hearing. Nonetheless, Relators argue that the specific allegations of fraud articulated in their Complaint were not explored in sufficient detail at the CWC Hearing. Therefore, they argue, the public disclosure bar has no application. DI Opp. at

---

[5] 18 U.S.C. § 1581 *et seq*. and 22 U.S.C. § 7101 *et seq*., discussed in GLS' MTD at 2, 31-34.

[6] Relators' allegations as to Contract 2 (the Defense Language Interpretation Translation Enterprise contract, W911W4-11-D-0004) are that it was improperly obtained by virtue of the fraud under Contract 1. Opp. at 32-33. These claims therefore depend on the same underling information as Contract 1 and are equally barred by the public disclosure of that underling information.

[7] Relators do make the point that the hearing was a "case study" and not an "accusatory proceeding," but do not claim this makes a difference under the public disclosure bar. DI Opp. at 15. Neither 31 U.S.C. § 3730(e)(4) nor case law makes such a distinction.

14-20. Further, they claim, because in response to certain questions GLS' representative allegedly lied during the hearing, this vitiates the public disclosure bar. Neither argument has merit.

First, "[t]here is no requirement . . . that the public disclosure matches *with specificity* the allegations made by a *qui tam* relator." *Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x at 294. Public disclosure occurs when "critical elements exposing the transaction as fraudulent are placed in the public domain." *United States v. Emergency Med. Assocs. of Illinois, Inc.*, 436 F.3d 726, 729 (7th Cir. 2006) (citation omitted); *see Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x at 293-95. Similarly, a public disclosure need not mention a specific theory of fraud. DI Opp. at 21 (arguing public disclosure requires the same specific allegations, such as "that GLS was violating Kuwaiti law and the TVPRA"). In fact, the disclosure need "not necessarily alert federal agencies to *wrongdoing*" to serve as public "notice of the *transactions*." *Collegiate Funding Servs., Inc.*, 469 F. App'x at 257 (emphasis added).

The public disclosure bar asks only if there was a disclosure of information from which fraudulent activity may be inferred. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653-54 (D.C. Cir. 1994). In other words, the relevant query is whether the information that was made public "put the Federal Government on notice of a potential fraud." *Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x at 294.

Second, a claimed lie does not vitiate the public disclosure. The standard is not whether a defendant has affirmed the allegations of fraud during a public hearing. The record need not match the specific framing, exact facts, or even the same parties as pled by a relator. *See, e.g., Emergency Med. Assocs. of Illinois, Inc.*, 436 F.3d at 729 ("We are unpersuaded by an argument that for there to be public disclosure, the specific defendants named in the lawsuit must have been identified in the public records"). What matters is whether the government is put on notice "from which an

investigation could have begun or developed." *Collegiate Funding Servs., Inc.*, 469 F. App'x at 257. Under this standard, Relators' claims fail.

### B. The Congressional Hearing and Media Statements Disclose the Facts Underlying Relators' Claims—and Even Raised Many of Relators' Concerns.

*The facts underlying Relators' subcontracting claims were publicly disclosed.* Animating the entirety of the CWC Hearing was the following question: did GLS and others properly use small business contractors as required by the Contract at issue in this case. A government auditor at the CWC Hearing testified that the "subcontractors do not hire, manage, *or interact with the linguists other than to pay the amount stipulated by GLS*." CWC Hearing Tr. at 7 (emphasis added). One commissioner stated that the government is "concerned" about GLS' use of small business subcontractors because GLS does "all of the recruiting, the hiring, the training, and, essentially, the management on the ground. *The subcontractors are responsible for seemingly very little.*" *Id.* at 9 (emphasis added). Another questioned GLS' use of small business subcontractors, asking if GLS "*really did not want the small businesses to do anything* but to satisfy the government? They basically gave them [*i.e.* subcontractors] money to give to the translators and that is it?" *Id.* at 21 (emphasis added). Yet another said that, given the government's concerns, he would "call them *do-nothing subcontractors*." *Id.* at 15 (emphasis added). These are the same concerns in Relators' Complaint.[8] These disclosures are more than enough to put the government on notice. *See Collegiate Funding Servs., Inc.*, 469 F. App'x at 257; *see also Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x at 294. Whatever GLS may have said in response cannot *undo* the

---

[8] Indeed, the Complaint's allegations include some of the same precise language as the CWC Hearing. Relators argue that the small business subcontractors were contracted to do nothing whereas there was "no accusation that a small business subcontractor was contracted to do nothing" at CWC Hearing. DI Opp. at 16. In fact, the hearing not only discussed this issue, a commissioner even used the phrase "*do-nothing subcontractors*." CWC Hearing Tr. at 15.

fact of these public disclosures.

**Relators' labor claims were publicly disclosed.** Relators' labor-dispute claims are also barred. Both extensive media coverage in 2013 and 2014 and Relators' own prior statements in the media disclose these same issues. *See* MTD at 28-29; DI Motion to Dismiss (Dkt. 83) at Appendix A. Even a brief review shows that 2013 and 2014 media reports explicitly alleged that GLS and Al Shora were responsible for the improper treatment of Relators, citing many of the exact statements on which Relators now base their claims. *E.g., compare* Opp. at 5 (GLS or Al Shora "confiscated their passports," made them "work illegally without Resident Visas or work permits," and "abused Kuwaiti law") *with* Yochi Dreazen, *Investigation: No Exit*, Foreign Policy (Oct. 2, 2013) (GLS or Al Shora "confiscated their passports," were "violating the terms of their work visas," and "breach[ed] Kuwaiti immigration law"). To the extent Relators try to distinguish their claims from prior disclosures, the record shows otherwise.

### C. Relators Effectively Concede They Are Not Original Sources Under the Pre-Amendment Bar and Do Not Adequately Plead Such Status Under the Post-Amendment Bar.

#### i. As to All Claims, Relators Are Not Original Sources.

Relators are not original sources.[9] The Opposition effectively concedes that they are not original sources under the pre-amendment bar.[10] DI Opp. at 23 ("Relators are original sources *pursuant to the amended FCA*" (emphasis added)).

Relators' Opposition tries to salvage original source status under the post-amendment bar. In this regard, the Opposition notes the basic requirements of original source status—knowledge

---

[9] Relators do not even attempt to claim how they could qualify as original sources with respect to their allegations concerning Contract 2. As Relators fail to show they qualify as original sources with respect to Contract 1, the same is true for Contract 2.

[10] As set forth in GLS' Motion to Dismiss, since Relators' claims span the March 23, 2010 amendments to the public disclosure bar, two versions are relevant here. MTD at 26.

(1) "independent of" the public disclosure and that (2) "materially adds to the publicly disclosed allegations or transactions." DI Opp. at 2; *see* 31 U.S.C. § 3730(e)(4)(B). However, the Opposition fails to articulate how these standards apply here. And the Complaint, riven with "information and belief" allegations, fails to allege any facts that would allow such a conclusion.

On their subcontracting claims, Relators allege no facts that are independent of the public disclosure or that materially add to the publicly disclosed allegations. For example, the Complaint alleges no facts that would indicate that Relators knew about the facts that gave rise to their fraud in the inducement claim. Numerous essential allegations are pled "on information and belief." *See, e.g.*, FAC ¶¶ 117, 526-28 (pleading "upon information and belief" as to GLS' representations to the government), ¶ 119 (claims submission), ¶ 132 (interpretation of laws), ¶¶ 185-86, 491 (actual performance under the contract). And the Opposition makes no attempt to show how translators hired overseas and after the Contract was entered into were privy to any negotiations or discussions regarding the Contracts terms.[11] Further, the cases Relators cite are inapposite. DI. Opp. at 24. In both *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 697 (4th Cir. 2014), and *United States ex rel. DeCarlo v. Kiewit/AFC Enters.*, 937 F. Supp. 1039, 1049 (S.D.N.Y. 1996), each relator was an employee at the time of the alleged fraudulent conduct, witnessed it firsthand, and had knowledge prior to any public disclosure—unlike Relators here.

The same holds true for the alleged fraudulent submissions. Relators' allegations are based on information and belief. Indeed, their Opposition seems to admit they lack any knowledge of actual claims for payment. Opp. at 8. Under similar circumstances—where an employee claims

---

[11] The Opposition's passing reference to "direct" knowledge, DI Opp. at 20, is not supported by pleading any basis for such knowledge and is undermined by Relators admitting it was from their "research," DI Opp. at 24. *United States ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396, 400-02 (5th Cir. 2008) ("[If] a relator's claim is based on knowledge received from other persons it is not direct and independent.")  (citing *Alcan Elec. & Eng'g, Inc.*, 197 F.3d at 1021).

fraud but has no direct knowledge of the billing process, amount charged, or claims submitted to the government—Courts have concluded that the employee is not an original source. *See, e.g., United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848 (3d Cir. 2014); *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1021 (9th Cir. 1999).

Even if Relators had pled independent knowledge, they still bear the burden of showing how they "materially add" to the publicly disclosed information. *See United States ex rel. Moore v. Cardinal Fin. Co., L.P.*, No. CCB-12-1824, 2017 U.S. Dist. LEXIS 46983, at *35 (D. Md. Mar. 28, 2017). Relators' Opposition fails to do so. Relators point to *legal theories* and reference their *allegations*, but they do not identify the required new "*information*—distinct from what was publicly disclosed—that adds in a *significant way* to the essential *factual* background." DI Opp. at 26 (citing *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)) (emphasis added).

### ii. Relators' Opposition Admits That They Failed to Disclose the Labor Issues to the Government Prior to Their Own Public Disclosure.

As to Relators' labor related claims, there is an independent reason why Relators' claims are barred. Relators failed to disclose to the government as required. "[P]rior to a public disclosure" a relator must "voluntarily disclose[ ] to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(B). Relators' response that they met this requirement by their "March 23, 2015 . . . Initial Disclosure Statement with U.S. Department of Justice," DI Opp. at 23, is just an acknowledgement of this shortcoming. Relators have not established how they "materially add" to the detailed 2013 and 2014 public disclosures in the media. And Relators filing a labor and breach of contract action in 2013, at same time these facts were publicized in the media, and then later filing the current FCA action, is what the public

disclosure bar seeks to prevent. The record is clear that Relators did not first share this information with the government. *See* MTD at 4, 29-30.

## II.   Relators' Opposition Does Not Save Their Fatally-Flawed Subcontracting Claims.[12]

### A.   Relators' Opposition Confirms That They Cannot Identify the Particular Contract Requirement on Which Their Subcontracting Claims Depend.

Relators' primary theory of fraud is based on the alleged fraudulent inducement and alleged fraudulent representations in performing the Contract. *See* Opp. at 6. Yet even in their Opposition, Relators fail to identify the specific provision of the Contract that GLS allegedly violated, nor plead with particularity how that specific provision of the contract relates to any fraud by GLS.[13]

Relators, GLS, and the government all agree that a well-pled FCA complaint requires pleading, with the appropriate particularity, "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.*, that involved a 'claim')." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999)). As the government's SOI explains, a contract-based FCA claim requires pleading, with particularity, the

---

[12] All of these arguments apply with equal or more force to Relators' claims under Contract 2. They have failed to provide even the basic outlines of that contract, let alone pled each required element of an FCA claim with the required particularity.

[13] GLS explained in detail in its Motion to Dismiss that violations of SBA policies cannot give rise to an FCA claim. In their Opposition, Relators do not argue otherwise. As the government confirms, this is not sufficient to plead a fraud. The government's SOI explains that the Fourth Circuit has held a "relator's subjective belief that the defendant's performance was inadequate" under a contract does "not render the defendant's claims false." SOI at 8-9 (citing *Wilson*, 525 F.3d at 376-77). Further, the issue is, as the government acknowledges, that pleading a fraud relating to work intended for subcontractors requires pleading the *specific* "*work* intended for" or *specific* "*function*" reserved for the subcontractor. SOI at 7 (emphasis added). Relators fail to plead these very points and for this reason their Complaint should be dismissed.

"certain *conditions*" of that contract at issue. SOI at 6 (quoting *Harrison*, 176 F.3d at 787) (emphasis in the SOI). Relators must then explain how the "'defendant falsely certified that it had complied with the *conditions*' to obtain the government benefit." *Id.* Here, Relators do not plead the relevant contract condition.

Unable to point to the relevant contract provision, Relators' Opposition doubles down on their flawed Complaint by pointing to tasks that *could* be performed by or *could* involve small businesses, including recruiting (*e.g.,* FAC ¶¶ 96-100, 188, 209; Opp. at 6-7), payroll (*e.g.,* FAC ¶¶ 105, 108; Opp. at 7), and scheduling travel and logistics (*e.g.,* FAC ¶¶ 65, 102, 104; Opp. at 7). Relators apparently hope that by pointing (over and over) to tasks GLS *could* have performed the Court will *assume* some of these were contractually reserved for small businesses. This is not a well-pled fraud. Relators have not identified or explained where in the Contract such tasks are discussed. They have not pled with specificity that these tasks were reserved for the "SBA Defendants."[14] Relators' references to linguists moving from one subcontractor to another, another point stressed in the Opposition, fares no better. Opp. at 7. Even if true, Relators fail to connect this activity to a *contract requirement.* Without such a requirement, Relators have not pled a fraud.

The government's SOI confirms that this is a fatal defect. As the government explains, pleading a contract-based FCA claim requires identifying a specific "responsibility in the contract" and how it was violated. SOI at 7 (citing *United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 (4th Cir. 2017)). The Fourth Circuit's decision in *Triple Canopy*, cited by the government and Relators, is instructive. The Fourth Circuit found an FCA suit could proceed because the relator pled *the exact provision of the contract* violated (specifying required marksmanship scores "on a U.S. Army qualification course") and how *that provision* was violated (detailing how guards did

---

[14] GLS uses this term to cover those parties as identified by Relators. *See, e.g.,* Opp. at 1, fn. 2.

not meet these scores and how the contractor concealed it). *Triple Canopy* confirms that, even at the motion to dismiss stage, a contract-based fraud must plead contract provisions with particularity. It is not enough to allege generally that a contractor did not treat third parties as required, but then fail to identify any such requirement. Yet that is what Relators plead as to GLS.

**B.   <u>Relators' Opposition Attempts to Reframe the Complaint to Save Their Subcontracting Theories.</u>**

Relators' Opposition tries to save the Complaint by recharacterizing what it already pled. Relators now claim that their primary SBA theory is that the way in which the SBA Defendants were involved amounted to "no work" whatsoever (Opp. at 2, 6, 9, 13) and that this amounts to a fraud based on the Contract's "SBA Set-Aside" provision (Opp. at 1-3, 5, 11). First, the Opposition ignores the primary subcontracting claim Relators put forth in their Complaint, that the SBA Defendants' roles were not sufficiently "meaningful." *See, e.g.,* FAC ¶¶ 95, 112, 170. Second, to the extent the "SBA Set-Aside" provision is discussed at all in the Complaint, it is not pled as the basis for fraud. Rather, their Complaint describes the two general provisions of Contract 1 as: that GLS had to develop a subcontracting plan (it did); and that GLS had to *set aside* certain subcontracting dollars for small businesses (it did). FAC ¶¶ 69-71. Relators' Complaint uses these to build their arguments about meaningful role and the goals of SBA policy. FAC ¶¶ 95-116. It does not plead that GLS failed to perform either of these steps. To now frame the latter as the basis for the fraud is inconsistent with, if not outside the bounds of, the Complaint. And is not supported by the allegations therein, let alone with the particularly required by Rule 9(b).

**III.   <u>Relators' Opposition Illustrates That the Complaint Depends on Inadequately-Pled Collective Knowledge That Rule 9(b) Does Not Permit.</u>**

Relators also fail to plead the other essential elements of the alleged scheme sufficient to meet the requirements of Rule 9(b). Relators must plead with particularity the "time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained." *Harrison*, 176 F.3d at 784 (citation omitted). In other words, the "who, what, when, where, and how" of the alleged fraud. *Wilson*, 525 F.3d at 379. *See also Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015). The Opposition claims Relators pled all elements with an "extraordinary amount of detail." Opp. at 6. It surveys the Complaint to show how Relators pled the "who, what, when, where, and how" of the alleged fraud. *Id.* at 6-8. But, in fact, this survey only illustrates the fundamental weakness in the Complaint.

The Opposition's summary of the Complaint is a disjointed string of facts. It shows the Complaint includes a who (certain employees "working with *identifiable* counterparties at the SBA Defendants"), what ("SBA Defendants were not *bona fide* small businesses"), when (a seven-and-a-half-year period), where (all locations mentioned in the allegations), and how (a restatement of all claims) in only the most basic sense. Opp. at 6-7. It also shows that Relators fail to connect these disparate elements. For example, what role did the named managers play in the alleged fact that the "SBA Defendants were not *bona fide* small business subcontractors"? When in the seven-and-a-half-year span did it happen? Did those employees (whoever they were) know what the SBA required? And which of them played a role in the "false employment contracts"? When or where were the alleged false employment contracts prepared? Did the employees involved have any indication that these were "false" when preparing them? Relators never explain or offer facts that could fill in these gaps. This is not a well-pled fraud.

Relators instead depend on collective corporate knowledge. They want this Court to *assume* the essential links between these points. In other words, assume that there must have been a fraud. This is the type of pleading Rule 9(b) aims to prevent.

Relators fail to make these essential connections or otherwise explain their fraud because they cannot. They lack knowledge essential to their claim. GLS' position is not, as the Opposition

argues, that Relators must assemble a complete team of leaders before any claim can proceed. Opp. at 8. Rather, it is that *these Relators* lack the information necessary to plead *these claims*. The Opposition points to no such facts in the Amended Complaint because there are none. Instead, Relators repeatedly plead "upon information and belief" as to essential elements of the fraud. *See, e.g.*, FAC ¶¶ 117, 526-28 (pleading "upon information and belief" as to GLS' representations to the government), ¶ 119 (claims submission), ¶ 132 (interpretation of laws), ¶¶ 185-86, 491 (actual performance under the contract). And Relators have not explained the resulting fraud, starting with whether these are express or implied claims. In practice, Relators' approach would eviscerate Rule 9(b).

Relators try to save their claims by looking to a small set of cases where, for an *otherwise fully pled theory of fraud*, a court may have granted some leeway as to the detailed factual pleadings. Opp. at 8-9. The fundamental problem is that Relators *do not explain their theory of fraud*. They fall short at the most basic level. For example, and as discussed, they have not identified the specific Contract provision being violated. Another example, the Complaint repeatedly references both express and implied false claims, but never clearly pleads which theory applies in which instance. This stands in stark contrast to those cases cited by Relators. If anything, those cases are instructive as to what Relators are missing. *See, e.g.*, *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 124 (D.C. Cir. 2015) (explaining in detail the contract provision at issue, that it was "an express requirement," and the specific corporate policies that violated the same). They do not cite to a case that does what they ask this Court to do: assume the fraud itself.

Relators' responses as to their other deficiencies are equally unavailing. Relators have not pled the submission of a false claim with particularity. Their Opposition admits as much. Opp. at 8. Rather than explain or clarify, the Opposition suggests Relators are not required to do so here.

*Id.* at 8-9. This is incorrect. The FCA requires that a "claim actually must have been submitted to the federal government for reimbursement." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013). As explained by the government, even at the motion to dismiss stage this requires a complaint include "indicia of reliability" that "an actual false claim was presented." SOI at 2-3 (quoting *Takeda Pharm. N. Am., Inc.*, 707 F.3d. at 457). Relators offer only the bare assertions that claims must have been submitted. *See, e.g.,* Opp. at 10, 13, 28, 31 (pleading, without support, that GLS knew it was submitting a false claim). The Opposition tries to justify this failure by pointing to cases where the well-pled fraud and theory of the case are clear *and a false claim necessarily follows.* Opp. at 7-9. But as the Fourth Circuit has explained, "when a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, <u>a relator must allege with particularity that specific false claims actually were presented to the government for payment.</u>" *Takeda Pharm. N. Am., Inc.*, 707 F.3d at 457 (italics in original, underlining added). Relators' Complaint is such a case because the actions pled do not *necessarily* lead to the knowing submission of a false claim. The Opposition confirms as much.

Relators also have not pled materiality. The Opposition confirms that they look primarily to a single specific requirement, with the apparent assumption that any requirement proves materiality as to all. Opp. at 11. But not all contract requirements are material. The mere fact that one provision includes specific language does not demonstrate the same is true for all provisions. Indeed, the purpose of the materiality requirement is that Relators must show the *specific provisions* at issue are material to payment. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). Further, as to the one contractual provision Relators identify as material, they have not pled a clear violation. Opp. at 11.

Relators also fail to adequately plead scienter. For an FCA claim, Relators must plead that the misrepresentation was knowing, made with the intent to induce payment, and then plead "specific facts that support an inference of fraud"—*i.e.* an adequate basis to infer intent. *Wilson*, 525 F.3d at 379. They fail to do so. And their Opposition effectively offers no support. In sum, Relators fail to offer the information necessary to sustain their fraud claim. *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion"); *see also United States ex rel. Godfrey v. KBR, Inc.,* 360 F. App'x 407, 411 (4th Cir. 2010) ("Although the failure to allege the requirements of the underlying contracts is the complaint's most significant shortcoming, we note that the complaint does not allege the specifics of anything -- the terms of the subcontracts, the amounts claimed by the subcontractors on the invoice, or the amounts that should have been claimed").

## IV.   Relators Fall Well Short of Pleading Any NISPOM Violation or Resulting Fraud.

Relators never clearly identify or explain the NISPOM violation at issue, let alone link this to the Contract, show scienter as to such violation, or identify the related submission of a claim. Relators appear to rely entirely on the general NISPOM "Operating Manual" language. But they make no effort to explain the terms used therein (*e.g.,* "under foreign ownership, control or influence ('FOCI')") or to explain when or how these apply. Opp. at 18. Instead, Relators appear to assume that because GLS "colluded with Al Shora" to circumvent certain requirements, certain linguists were necessarily under "foreign influence and control" in violation of the (unexplained) NISPOM standard. Relators do not explain, in their Complaint or their Opposition, how this resulted from the relationship with Al Shora or what it means. As factual support, they point to a stop work order issued by the Kuwaiti government. *Id.* But, the Complaint does not explain how

the actions of Al Shora or the Kuwaiti government amounted to foreign influence or control.

Relators do not explain how or why foreign control of linguists (even if true) is automatically imputed to be control of GLS. They do not explain how any of the activities (again, even if true) would have granted either foreign party the ability to "direct or decide matters affecting the management or operations of" GLS. FAC ¶ 160; Opp. at 18. Relators' only example is the issuance of a stop work order that may have prevented some individual linguists from working. They assume this amounts to "foreign influence and control," but offer no case law or further support. This falls well short of an adequately pled fraud.

## V.   **Relators Have Not Pled a TVPRA Violation or an FCA Claim on that Basis.**

Plaintiffs/Relators were not being trafficked nor were they victims of slavery. 22 U.S.C. § 7101(a) (The purpose of the TVPRA is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims"). They are well-compensated linguists who willingly entered into agreements with GLS or subcontractors. *See, e.g.,* FAC ¶¶ 242, 278, 354. Plaintiffs' efforts to rely on this statute for relief in a dispute with their former employer are misplaced. *See Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017) (finding that, as the statute is "intended to address *serious* trafficking" plaintiff failed to show her mistreatment while a paid employee was "was sufficiently serious to coerce"). Plaintiffs' labor grievances do not amount to a TVPRA claim.

The Opposition makes no meaningful attempt to respond to GLS' argument that three of the four prongs of 18 U.S.C. §1589(a)—(1) by means or threat of force or restraint; (2) by means or threat of serious harm; and (4) a scheme intended to cause the belief that the victim or others must work or be harmed—do not apply here. *See* Opp. 22-23; MTD at 31-33. The only TVPRA

grounds the Opposition attempts to defend are alleged violations of an "abuse of law or legal process" by GLS or Al Shora and the holding of certain Plaintiffs' passports by GLS or Al Shora.

First, Plaintiffs have not pled an "abuse of law or legal process" by GLS. Their Opposition confirms that they cannot articulate a coherent theory under this prong. Opp. at 23. Plaintiffs recite the jumbled facts from their Complaint but do nothing to clarify basic deficiencies raised in GLS' Motion to Dismiss. MTD at 32-34. They do not make clear which, if any, of these actions actually amounted to an abuse of law, *i.e.* a "purpose for which the law was not designed." 18 U.S.C. § 1589(c)(1). They do not make clear which laws were being abused. They do not make clear that such abuse, if any, was made with the required purpose, *i.e.* "to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* They do not make clear which party was responsible for these actions, GLS or Al Shora, which they claim "on information and belief" were alternatively colluding and feuding. Opp. at 23-24; FAC ¶¶ 138-39. And they do not establish that these actions, if any, were taken "knowingly" and with the purpose of "coerc[ing]" Plaintiffs into performing certain work. *Muchira*, 850 F.3d at 622-23. This is insufficient to establish any kind of abuse of laws claim under the TVPRA.

As to their passport-based claim, the Opposition does not overcome the fact that this provision, 18 U.S.C. § 1592, does not even apply here. This section, by its plain language, does not apply to conduct outside of the United States. MTD at 31. The Opposition's response is that this provision should apply because it relates to other provisions in the statute that expressly grant such reach. Opposition to Defendant AECOM National Security Programs, Inc.'s Motion to Dismiss (Dkt. 122) ("AECOM Opp.")[15] at 12-14. But neither the Complaint nor the Opposition cite to a single such use of this provision. Even if it were to apply, Plaintiffs have still failed to

---

[15] Again, this issue is addressed nowhere in the Opposition to GLS' Motion to Dismiss.

plead a TVPRA violation on this basis, including who was involved, that this person acted knowingly, and with the purpose of coercing the other party. Their Opposition again does no more to clarify this theory than with their other theories of a claim. Plaintiffs have not pled a coherent statement of what occurred, that it was done knowingly, and with the intent to coerce work. Opp. at 22-23. They have failed to plead a claim under the TVPRA.

Finally, to prove an FCA claim based on a TVPRA allegation, Relators have to do more. While for the TVPRA, Relators must plead their abuse of laws and passport confiscation claims, to then state an FCA claim on the same basis they must plead how this fits into a fraud on the government. Relators must plead the fraud with particularity, including that the conduct was material to payment and the resulting submission of a claim. In fact, the Opposition recognizes that Relators do not know the content of GLS' certifications and further that Relators are not even sure if they should be pleading express or implied certification for their TVPRA theory of fraud. Opp. at 26-27. Relators fail to state a well-pled FCA claim based on the TVPRA.

## CONCLUSION

Despite 150 pages of pleadings, Relators have not and cannot plead cognizable legal claims against GLS. Relators are not insiders and have no meaningful new, non-public information on which to base their current claims. So, instead of pleading specifics as the law requires, Relators make impermissibly vague allegations, improperly attempt to rely on publicly available information, and ask this Court to make assumptions to fill in the blanks necessary to allow their claims to proceed.

The Court can and should reject this approach. For all the reasons explained above, the Court should grant GLS' motion and dismiss Relators' claims against GLS, with prejudice.

Dated:  May 30, 2019                    Respectfully Submitted,

                                        /s/ *William F. Stute*
                                        _____
                                        William F. Stute (D. Md. Bar No. 20837)
                                        David Rhinesmith (D. Md. Bar No. 20881)
                                        Jonathan Direnfeld (D. Md. Bar No. 28859)
                                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                                        Columbia Center
                                        1152 15th Street, N.W.
                                        Washington, D.C. 20005-1706
                                        Tel: 202-339-8580
                                        Fax: 202-339-8500
                                        *wstute@orrick.com*
                                        *drhinesmith@orrick.com*
                                        *jdirenfeld@orrick.com*

                                        *Attorneys for Defendant Global Linguist*
                                        *Solutions, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filings to all counsel of record.

/s/ *William F. Stute*
William F. Stute