**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | * | |
| ELGASIM MOHAMED FADLALLA, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 8:15-cv-01806-PX |
| v. | * | |
| | * | |
| DYNCORP INTERNATIONAL LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court are the motions for leave to amend answers to the Second Amended Complaint filed by Defendants KMS Solutions, LLC ("KMS") (ECF No. 324); Global Linguist Solutions, LLC ("GLS") (ECF No. 326); Thomas Wright, Inc. ("Wright") (ECF No. 327); Tigerswan, Inc. ("Tigerswan") (ECF No. 328); Dyncorp International, LLC ("Dyncorp") (ECF No. 329); and Shee Atika Languages, LLC ("Shee Atika") (ECF No. 330). The motions have been fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motions are DENIED.

### I.    Background

Plaintiff-Relators ("Relators") were hired to provide translation services to the United States armed forces in the Middle East. ECF No. 286 ¶ 5. They bring this *qui tam* action pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), and the Trafficking Victims Protections Reauthorization Act, 18 U.S.C. §§ 1581, *et seq. Id.* ¶¶ 528–633. The Court previously summarized the relevant factual and procedural background at length in its September 5, 2019 Memorandum Opinion and Order (ECF No. 145) and incorporates those facts here. *See*

ECF No. 145 at 1–7.  The Court focuses only on those facts necessary to resolve the pending motions.

On December 5, 2007, the Commander, Headquarters, United States Army Intelligence and Security Command ("INSCOM") identified Defendant GLS as a "proposed awardee" of Contract W911W4-08-D-0002 ("Contract 1"), a $4.6 billion contract for "the provision of linguists to support U.S. military and intelligence-gathering efforts in the middle east."  ECF No. 286 ¶¶ 2–3, 91–92.  To secure Contract 1, INSCOM required GLS to submit a "Small Business Subcontracting Plan" which set forth the portion of contract funds to be expended through various categories of small businesses.  *Id.* ¶¶ 101–102.  As part of this plan, and as a material term of Contract 1, INSCOM required GLS to submit annual reports itemizing the subcontractor expenditures.  *Id.* ¶¶ 109–11.

To win the bid, GLS teamed up with Defendants Dyncorp and AECOM National Security Programs, Inc. ("AECOM"),[1]  and entered into "Teaming Agreements" with Defendants KMS, Shee Atika, Wright, Tigerswan, and Invizion. ("Small Business Defendants"). ECF No. 286 ¶¶ 20–29.  GLS represented to INSCOM "that it intended to utilize the Small Business Defendants in accordance with the subcontracting requirements of Contract 1."  *Id.* ¶ 116.  Unbeknownst to INSCOM, however, the Teaming Agreements defined the Small Business Defendants as "GLS affiliates" and not "*bona fide* independent small business entities."  *Id.* ¶¶ 117–18.

Relators allege that GLS, with DynCorp and AECOM, performed on Contract 1 while misleading INSCOM into believing that in fact the Small Business Defendants had performed

---

[1] AECOM has already filed its Answer and has no motion to amend pending before the Court.  *See* ECF No. 346.

the same work.  *Id.* ¶ 120.  Relators particularly aver that they interacted exclusively with GLS managers, and the Small Business Defendants only nominally appeared on the employment contracts.  *Id.* ¶¶ 119–22.  Relators thus claim that "GLS received unjustified payments from the U.S. by falsely representing its employees, including Relators, as working for the Small Business Defendants."  *Id.* ¶ 149.

On June 19, 2015, Relators filed this *qui tam* action on behalf of the United States pursuant to the FCA.  ECF No. 1.  The FCA generally assigns liability to "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States.  31 U.S.C. § 3729(a)(1)(A).  Private parties, like Relators, may bring FCA actions on behalf of the United States when the Department of Justice declines to pursue the action.  *See id.* § 3730(b)(4)(B).

Although this litigation has gone on for years, Defendants now claim that Relators are likely barred from pursuing the FCA claim.  ECF Nos. 326-3 at 8–9; 327-1 at 8–12; 328-3 at 7–10; 329-1 at 1; 330-1 at 9–12.  Defendants ground this argument in GLS having sought previous reimbursement on behalf of KMS and Invizion, pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101–7109 ("CDA"), for services rendered pursuant to Contract 1.  *See, e.g.*, ECF No. 326-3 at 8–12; *see also* ECF No. 331-3 at 5.

In the course of GLS submitting requests for periodic payment under Contract 1, the Defense Contract Audit Agency ("DCAA")[2]  began investigating various irregularities in the execution of the contract to include whether GLS' payment requests complied with the contract terms, were free of misrepresentation or other fraud, and whether the payment was properly

---

[2] The DCAA is a government agency that "provides audit and financial advisory services to [Department of Defense] and other federal entities responsible for acquisition and contract administration . . . The Agency's primary function is to conduct contract audits and related financial advisory services."  DCAA: Defense Contract Audit Agency, *Our Agency*, https://www.dcaa.mil/ (last visited July 29, 2022).

supported.  ECF No. 326-3 at 2–3; *see generally* ECF No. 331-3.  As part of DCAA's due diligence, it conducted several audits, specifically of Invizion and KMS, and ultimately concluded that neither KMS nor Invizion maintained a "labor force of its own regarding the GLS contract."  *See* ECF No. 331-3 at 6, 8.  DCAA next issued several "Form 1 Notices," which are referrals to the Army Criminal Investigation Command for subsequent possible investigation of potential contractor fraud.  *Id.* at 6.  DCAA also denied GLS' request for payment totaling $4,505,280.  *Id.* at 11.

In response, GLS went on the offensive.  It submitted a "certified claim" on behalf of KMS and Invizion pursuant to the procedures set forth in the CDA ("the CDA Action").  *See* ECF No. 331-1 at 53.  The CDA provides a comprehensive administrative scheme whereby government contractors may seek review of the suspended payments through submitting a certified claim to a Government Contracting Officer ("GCO").  *See* 41 U.S.C. §§ 7103–7104.  If the GCO denies the certified claim, the contractor may appeal the decision to the appropriate Board of Contract Appeals within 90 days or file a claim against the government in the Court of Federal Claims.  *See* 41 U.S.C. § 7104 (a)–(b).

 Ultimately, the GCO denied GLS' claim because the demand for payment was "inadequately supported or otherwise questionable, and not appropriate for reimbursement under the contract terms."  ECF No. 331-3 at 11.  GLS then appealed the denial to the Armed Services Board of Contract Appeals ("ASBCA").  ECF No. 331-1 at 56.  On appeal, the Army, through the United States Army Legal Services Agency, defended the GCO's denial of the claim.  *See generally* ECF No. 331-1.

After a two-day hearing, GLS and the Army entered into a settlement agreement that fully resolved the CDA Action.  ECF No. 331-2.  The parties agreed that GLS was to be paid

$3,275,000 on the claim as amounts owed for Invizion and KMS' pass-through claims for compensation.  *See id.*  In exchange, GLS withdrew its appeal.  *Id.*

Relevant here, the parties also agreed to a mutual release of all liabilities related to the "matters appealed" to the ASBCA.  ECF No. 331-2 at 3.  Notably, the parties expressly agreed that this release did not preclude the United States from pursuing future litigation for claims arising under the FCA.  The settlement agreement reads in relevant part:

> Notwithstanding any terms of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including Appellant) are the following claims of the United States:  (a) any civil, criminal or administrative liability arising under the Title 26, U.S. Code (Internal Revenue Code); (b) any criminal liability; (c) any civil liability for **false or fraudulent claims, including civil liability arising under the False Claims Act, 31 U.S.C. §§ 3729-3733,** and/or claims at common law; (d) any liability for personal injury, property damage or liability to third parties; and (e) any administrative liability outside the scope of the Contracting Officer's authority to release, including the suspension and debarment right of any federal agency. Further, both the Government and Appellant reserve and exclude from this Settlement Agreement any liability based upon such obligations as are created by this Settlement Agreement.

ECF No. 331-2 at 5–6 (emphasis added).

Defendants now move to amend their Answers to plead as an affirmative defense that Relators are precluded from bringing a *qui tam* action under what is known as the "government action bar" of the FCA.  The government action bar precludes an FCA *qui tam* suit that is "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  *See* 31 U.S.C. § 3730 (e)(3).  Defendants allege that the ASBCA appeal and related events qualify as "a civil suit or an administrative civil money penalty proceeding" under this bar and thus precludes Relators' FCA claims.  *See* ECF Nos. 326-3 at 8–9; 327-1 at 8–12; 328-3 at 7–10; 329-1 at 1; 330-1 at 9–12. Relators oppose Defendants' amendment as futile and prejudicial.  *See generally* ECF No. 331.

The Court agrees with Relators that amendment would be futile as a matter of law, and so amendment will be denied.

## II.      Standard of Review

Federal Rule of Civil Procedure 8(c)(1) requires a defendant's responsive pleading to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). At the same time, Rule 15 permits courts to grant leave to amend such a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny a motion for leave to amend is confined to the discretion of this Court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCall-Scovens v. Blanchard*, No. ELH-15-3433, 2016 WL 6277668, at *4 (D. Md. Oct. 27, 2016). Leave to amend may be denied for prejudice to the opposing party, bad faith by the moving party, or futility of amendment. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).[3]

## III.     Analysis

The government action bar is customarily invoked when the government has previously pursued separate action to thwart fraud committed against it. *See Found. for Fair Contracting, Ltd. v. G &M E. Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 336 (D.N.J. 2003) (citing *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675–76 (8th Cir. 1998)). The bar is designed to prevent "parasitic suits by opportunistic late-comers," that is the relators, "who add nothing to the exposure of the fraud" by pursuing a *qui tam* action. *Costner*, 153 F.3d at 675–76; *see also U.S. ex rel. Dugan v. ADT Sec. Servs., Inc*., No. DKC-2003-3485, 2008 WL 11509757, at *7 (D.

---

[3] Although Defendants have sought leave to amend their Answers, they maintain that the government action bar is jurisdictional, and so can be raised at any time. *See* ECF Nos. 326-3 at 3–4; 327-1 at 3; 328-3 at 3; *see also* Fed. R. Civ. P. 12(h)(3). Relators disagree. *See* ECF No. 331 at 14–16. The Court need not resolve this question because Defendants seek only to amend their Answers to preserve this defense. In this respect, the propriety of allowing amendment pursuant to Rule 15 does not depend on whether the defense itself implicates the Court's jurisdiction. *See United States ex rel Doe v. Odom*, No. 20-cv-00803-CMC, 2021 U.S. Dist. LEXIS 194229, at *7–9 (D.S.C. Feb. 2, 2021) (declining to consider whether government action bar is jurisdictional when the defense failed as a matter of law).

Md. Sept. 24, 2008) (government action bar is designed to preclude citizen suits that have no

"useful or proper return to the government."). The government action bar reads:

> In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

31 U.S.C. § 3730(e)(3).

The Defendants bear the burden of demonstrating that the government action bar applies

to this suit. *See S. Appalachian Mountain Stewards v. A & G Coal Corp.*, 758 F.3d 560, 569 (4th

Cir. 2014) (citing *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th

Cir. 2012)) ("As with any such [affirmative] defense, the defendant bears the burden of proving

that it may validly advance it.").

In a nutshell, Defendants assert that their pursuit of contract payments in the CDA Action

triggers the government action bar under the FCA. Defendants argue that the *qui tam* action is

"based upon" the same "allegations or transactions" that were the subject matter of the ASBCA

appeal, which, in their view, is a "civil suit or an administrative civil money penalty proceeding."

As such, Defendants maintain that this suit gives no useful return to the Government and so,

must not go forward. *See* ECF Nos. 326-3 at 8–9; 327-1 at 8–12; 328-3 at 7–10; 329-1 at 1; 330-

1 at 9–12.

Defendants' argument demands that this Court construe two very interrelated statutes, the

CDA and FCA. Accordingly, the Court must read both "in harmony and not in conflict," so as to

"give full effect to both[.]" *Shumate v. Patterson*, 943 F.2d 362, 365 (4th Cir. 1991) (citing

*Morton v. Mancari*, 417 U.S. 535, 551 (1974)); *see State v. United States*, 7 F.4th 160, 164 (4th

Cir. 2021) (quoting *Morton*, 417 U.S. at 551) (""[W]hen two statutes are capable of co-

existence,' we cannot say that one nullifies the other 'absent a clearly expressed congressional intent' to that effect.").

In 1978, Congress enacted the CDA to provide "a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims." *Montano Elec. Contractor v. United States*, 114 Fed. Cl. 675, 680 (2014) (citing *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009)), *aff'd*, 610 F. App'x 987 (Fed. Cir. 2015); *see also* Contract Disputes Act of 1978, S. Rep. No. 95-1118, at *1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235 (noting that a purpose of the CDA is to "induce resolution of more contract disputes by negotiation prior to litigation."). The statute provides the exclusive mechanism for government contractors to dispute payments received pursuant to government contracts. *See Texas Health Choice, L.C. v. Off. of Pers. Mgmt.*, 400 F.3d 895, 898 (Fed. Cir. 2005) (quoting *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995)) (noting that "[w]hen the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution.").

Notably, the CDA expressly exempts from its reach claims involving fraud. Under the CDA, no agency head may "settle, compromise, pay, or otherwise adjust any claim involving fraud." 41 U.S.C. § 7103(c)(1). From this, courts have held that "where the specific events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations, the CDA no longer applies." *U.S. ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 224 (D. Md. 1995) (quoting *United States v. Rockwell Intern. Corp.*, 795 F. Supp. 1131, 1135 (N.D. Ga. 1992)).

Similarly, the CDA makes clear that Boards of Contract Appeals, such as the ASBCA, cannot adjudicate "a claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or

determine." 41 U.S.C. § 7103(a)(5). Because the FCA is a "statute" where fraud related claims, disputes, and penalties are "prescribed," and the FCA reserves prosecution to another agency, namely, the Department of Justice, then Boards of Contract Appeals simply cannot reach any claims covered by the FCA. *See United States v. EER Sys. Corp.*, 950 F. Supp. 130, 134 (D. Md. 1996) (noting the text of the CDA "expresses Congress' intent that all government contract disputes involving fraud were not to be affected by the CDA."); *United States v. Unified Indus., Inc.*, 929 F. Supp. 947, 950 (E.D. Va. 1996) (quoting *Mayman*, 894 F. Supp. at 224) (instructing that the CDA no longer applies when the "events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations"); *see also UMC Elec. Co. v. United States*, 45 Fed. Cl. 507, 509 (1999) ("Moreover, the contracting officer was without authority to determine fraud without referral to the Department of Justice.").

The legislative history of the CDA further supports that the statute does not entertain claims involving fraud. Indeed, Congress made clear that the CDA was not intended to usurp the Department of Justice's province related to identifying and pursuing procurement fraud, which notably includes FCA actions. *See* S. Rep. 95-1118, at *5; *see also Martin J. Simko Const., Inc. v. United States*, 852 F.2d 540, 543–44 (Fed. Cir. 1988) (explaining legislative history of CDA); 41 U.S.C. § 7103(a)(5) (review under CDA "does not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or determine."); 48 C.F.R. 33.210 (2022) (instructing that GCOs' authority "does not extend to . . . [t]he settlement, compromise, payment, or adjustment of any claim involving fraud"); Defense Logistics Agency—Request for Advance Decision, B-230095, 1988 U.S. Comp. Gen. LEXIS 275, at *4 (Mar. 16, 1988) ("Under the CDA, as reflected in the

FAR, a contracting agency shall not settle, compromise pay or otherwise adjust any claim involving fraud.").

Indeed, only in very narrow circumstances not present here have questions of contractor fraud arisen in actions pursued under the CDA. Occasionally, the ASBCA has voided government contracts *ab initio* when the contract was procured by fraud. *See, e.g.*, *C & D Constr., Inc.*, ASBCA No. 38661, 90-3 BCA ¶ 23,256. Or the ASBCA has given preclusive effect to another court's finding that a contract had been procured by fraud. *See, e.g., Atlas Int'l Trading Corp.*, ASBCA No. 59091, 15-1 BCA ¶ 35,830.[4] But by and large, CDA actions are confined to disputes arising from the terms of a government contract.

By contrast, matters concerning fraudulent procurement of contract payments are covered by the FCA. The FCA specifically permits the Department of Justice to proceed criminally or civilly against any person or corporation that knowingly attempts to obtain government payments through "false or fraudulent" representations. *See generally* 31 U.S.C. §§ 3729, *et seq*.; *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 180 (2016). Where, as here, the Department of Justice declines to pursue such an action, relators may prosecute the matter on behalf of the government. 31 U.S.C. § 3730(c)(3). But even then, the Department of Justice ultimately decides whether the action will proceed, and also whether it may be settled or dismissed. *See* 31 U.S.C. § 3730(b)–(c); *Simko*, 852 F.2d at 548. This process makes sense given that the purpose of the FCA is to prevent fraud on the government as the real party in interest. *See Nasuti v. United States*, No. 14-398C, 2014 WL 12543799, at *4 (Fed. Cl. Sept. 4, 2014) (stating that the "Government alone owns a *qui tam* claim."); *aff'd*, 581 F. App'x 904 (Fed.

---

[4] Whether the ASBCA may entertain these arguments at all has been the subject of much debate. *See generally* Major Elinor J. Kim, *Why "Green Dreams" Should Not Come True: Keeping Boards of Contract Appeals Off the Scales of Justice*, 224 Mil. L. Rev. 1073 (2016); Davidson, Michael, *Claims Involving Fraud: Contracting Officer Limitations During Procurement Fraud Investigations*, 2002-Sep't Army Law. 21.

Cir. 2014); *see also* 31 U.S.C. § 3730(b) (noting that a *qui tam* plaintiff may bring an FCA action "in the name of the Government").

With this statutory background in mind, the Court turns to Defendants' argument. Defendants broadly contend that because GLS sought *contractual* reimbursement in the CDA Action, Relators are now prevented from raising a *fraud* action under the FCA. Defendants argue that the appeal before the ASBCA alone constitutes a "civil suit" for which the Government is a party. Thus, the mere pursuit of their contractual right to payment before the ASBCA, say Defendants, precludes any further action under the FCA. *See* ECF Nos. 326-3 at 8– 9; 327-1 at 8–12; 328-3 at 7–10; 329-1 at 1; 330-1 at 9–12. The Defendants are wrong as a matter of law and fact.

As a matter of law, if the Court credited Defendants' reading of the CDA as entertaining fraud claims, then almost any action for payment under a government contract, if appealed to the ASBCA, would preclude the Government from later contending that the same contractors violated the FCA. But this cannot be. Indeed, the CDA exempts fraud claims in the first instance. 41 U.S.C. § 7103 (a)(5), (c)(1). Thus, if the CDA claim cannot involve fraud, then it cannot, as the government action bar requires, be "based upon" the same "allegations or transactions" as the FCA claim. *Cf.* 31 U.S.C. § 3730(e)(3). To conclude otherwise would give no force and effect to the CDA provision that expressly exempts fraud allegations from its reach.

Nor can the Court discern any specific facts arising from the CDA Action to support that it had been "based upon" any "allegations or transactions" sounding in fraud, thus triggering the government action bar. The GCO's decision centered exclusively on whether GLS satisfied its contractual terms such that it was owed the amounts set forth in the certified claim. *See generally* ECF No. 331-3. And the appeal to the ASBCA never reached final resolution. *See*

*generally* ECF No. 331-2.  Instead, the parties settled the claim and *expressly* exempted from the mutual release of claims any future FCA action.  *See* ECF No. 331-2 at 4–5.  On these undisputed facts, the Court cannot see how the government action bar could ever apply when the CDA Action culminated in *reserving* future suit under the FCA.

For the same reasons, the Court rejects Defendants' alternative argument that the CDA Action constitutes an "administrative civil money penalty proceeding" such that the bar applies. The government action bar requires that whether the prior action was a "civil suit" or an "administrative civil money penalty proceeding," it must be "based upon allegations or transactions" that are the subject of the FCA claim.  *See* 31 U.S.C. § 3730(e)(3).  Because the Court concludes that the CDA Action is not based on the same allegations or transactions of the FCA claim, it is of no moment whether the CDA Action was a "civil money penalty proceeding."[5]

In sum, the Court approaches with great skepticism the contention that a CDA claim, even if litigated before the ASBCA, can trigger the FCA's government action bar.  Given that the CDA limits its application to government contract disputes—and expressly exempts matters involving fraud from its reach—it will be a rare case that a CDA claim bars future FCA suits. This case is not that.  Moreover, the CDA Action settled before final resolution, and the

---

[5] That said, the Court is not convinced that the CDA Action could ever constitute a "civil money penalty proceeding."  The CDA simply does not provide for money penalties as a sanction.  *Cf.* 41 U.S.C. §§ 7101–7109. Nor do Defendants claim they actually faced any sanction in any "proceeding" that could be construed as a "civil money penalty."  *Cf. Schagrin v. LDR Indus., LLC*, No. 14 C 9125, 2018 WL 2332252, at *2 (N.D. Ill. May 23, 2018) ("The few district courts to have addressed what constitutes an 'administrative civil money penalty proceeding' for purposes of § 3730(e)(3) agree that whether the government has already imposed a 'penalty' against the defendant is key to determining whether § 3730(e)(3) bars a subsequent FCA claim."); *U.S. ex rel. Johnson v. Shell Oil Co.*, 26 F. Supp. 2d 923, 927 (E.D. Tx. 1998) (payment demands and audits by Mineral Management Services not an administrative civil money penalty proceeding when demands only informed defendant of possible assessment of civil penalties); *United States v. FastTrain II Corp.*, No. 12-cv-21431, 2017 WL 606346, at *4 (S.D. Fla. 2017) (Department of Education preliminary program review not a civil money penalty proceeding when report did not include a demand for money penalty).  Thus, Defendants cannot make plausible that the CDA Action involved a "civil money penalty proceeding."  *See* 31 U.S.C. § 3730(e)(3).

settlement agreement expressly allowed for future FCA litigation.  Because the CDA Action is not based upon the same allegations or transactions as the FCA claim, the government action bar does not  apply.

**IV.     Conclusion**

Defendants' proposed amendments to their Answers to add the government action bar as a defense fail as a matter of law.  Accordingly, the proposed amendments would be futile. Defendants' motions to amend their Answers, therefore, must be denied.

A separate order follows.


August 29, 2022                                                            /S/
Date                                                          Paula Xinis
                                                              United States District Judge